# Matter of J-J-G-, Respondent

*Decided March 31, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The exceptional and extremely unusual hardship for cancellation of removal is based on a cumulative consideration of all hardship factors, but to the extent that a claim is based on the health of a qualifying relative, an applicant needs to establish that the relative has a serious medical condition and, if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country.

(2)  The Immigration Judge properly determined that the respondent did not establish eligibility for cancellation of removal because he did not demonstrate that his qualifying relatives will experience hardship, including medical, economic, and emotional hardship, that rises to the level of exceptional and extremely unusual.

FOR RESPONDENT:  Marjan H. Bahmani, Esquire, Encino, California

BEFORE:  Board Panel:  MALPHRUS, Acting Chairman; CREPPY and CASSIDY, Board Members.

MALPHRUS, Acting Chairman:

In a decision dated April 5, 2019, an Immigration Judge denied the respondent's applications for asylum, cancellation of removal, and withholding of removal pursuant to sections 208(b)(1)(A), 240A(b)(1), and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1229b(b)(1), and 1231(b)(3)(A) (2018), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The respondent has appealed from this decision.[1]  The appeal will be dismissed.

---

[1]  On appeal, the respondent contests the Immigration Judge's decision to deny his applications for cancellation of removal, withholding of removal, and protection under the Convention Against Torture.  He does not challenge the denial of his application for asylum, so that issue is not before us.  *See Matter of Zhang*, 27 I&N Dec. 569, 569 n.2 (BIA 2019).

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala who is present in the United States without being admitted or paroled.  After he was placed in proceedings and found to be removable, he applied for relief from removal. The sole issue regarding the respondent's statutory eligibility for cancellation of removal at his hearing was whether his removal would result in exceptional and extremely unusual hardship to his qualifying relatives.

The respondent presented evidence that he has six qualifying relatives— his five United States citizen children and his lawful permanent resident mother.  At the time of the hearing, his four oldest children were 12, 11, 8, and 5 years of age, and his youngest was 2 months old.  The respondent testified that his children would remain in the United States if he is removed. However, his partner, the mother of his children, testified that the children would relocate to Guatemala and indicated that she would also accompany the respondent.[2]  She previously worked and helped to pay the family's rent.

The respondent's 8-year-old daughter has been diagnosed with hypothyroidism, a condition she has had since birth.  She requires regular medication to treat this condition, and if she does not have it, she has problems regulating metabolic functions, like the temperature of her body. The medical costs of the respondent's children are covered by State benefits, and they receive food stamps.  The respondent claims that he would be unable to afford medication to treat his daughter's hypothyroidism in Guatemala. His partner stated that the medication costs $1,100 there, indicating that she obtained this information from the internet.  However, the respondent's mother testified that she had received medical care in Guatemala free of charge and believes that it is still provided for free in that country.

The respondent's oldest child went to counseling for about 3 months in 2016 for "aggressive and defiant behavior[]," but there is no indication that he was diagnosed with any mental health or behavioral issues.  The respondent's 11-year-old son attended the same counseling service for about 5 months in 2018 and was diagnosed with "Anxiety Disorder, unspecified" and "Attention-deficit hyperactivity disorder, unspecified."  After the counselors provided this child with coping strategies to alleviate his anxiety, including watching fewer "scary movies" with his older brother, they concluded that the relevant treatment goals had been met and that he had "[s]uccessful[ly] complet[ed] therapy."  There is a letter from the counseling

---

[2]  The respondent's partner did not address why her children would accompany the respondent to Guatemala, even though the children's medical conditions are a significant aspect of this case, and both she and the respondent claimed that the children need to remain in the United States to obtain proper treatment.

service in the record, stating that this son was scheduled for a "second intake and re-assessment," but no records of additional counseling were submitted.

With regard to the hardship of his lawful permanent resident mother, the respondent testified that he provides support to her and that he, his partner, and his children all live with, and pay rent to, his mother. The respondent presented evidence that his mother has been diagnosed with hypertension, but the evidence also indicates that State benefits cover all of her medical expenses and that she is able to take the bus to medical appointments and pick up her own prescriptions. Although the respondent and his mother claim that she suffers from other medical conditions, no documentation was submitted to corroborate this claim. She receives Social Security benefits and has rented a room in her home for income in the past. The respondent's sister indicated that she could live with and take care of their mother, who would remain in the United States in the event that her son is removed.

The respondent claimed that if his children accompany him to Guatemala, they will face limited educational and economic opportunities in that country, especially in light of his son's attention deficit disorder. He also argued that his mother and children will face emotional hardship in the event they are separated from him.

Regarding his application for withholding of removal and protection under the Convention Against Torture, the respondent claimed that gang members in Guatemala threatened and harmed him after he refused to join their gang in 1995 and 1996, when he was 12 and 13 years old, respectively. In addition, he claims that the relatives of his ex-girlfriend threatened him in 2002 in Guatemala because they falsely believed that he was involved in the death of her brother. He contends that the gangs and these individuals will harm him further if he is removed to that country.

## II. ANALYSIS

### A. Cancellation of Removal

To establish eligibility for cancellation of removal, the respondent must demonstrate, among other things, that his "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Section 240A(b)(1)(D) of the Act. For the following reasons, we will affirm the Immigration Judge's determination that the respondent has not established that his removal would result in the requisite level of hardship to his qualifying relatives.

## 1. Hardship Based on a Qualifying Relative's Health

The respondent argues that his qualifying relatives would experience the requisite level of hardship for cancellation of removal, at least in part based on their medical conditions. He also asserts that medical care for these conditions is unavailable in Guatemala. It is well settled that for purposes of cancellation, we consider the "ages, health, and circumstances of qualifying lawful permanent resident and United States citizen relatives." *Matter of Monreal*, 23 I&N Dec. 56, 63 (BIA 2001). The exceptional and extremely unusual hardship for cancellation of removal is based on a cumulative consideration of all hardship factors, but to the extent that a claim is based on the health of a qualifying relative, an applicant needs to establish that the relative has a serious medical condition and, if he or she is accompanying the applicant to the country of removal,[3] that adequate medical care for the claimed condition is not reasonably available in that country.[4]

Whether a qualifying relative suffers from a serious medical condition and whether adequate medical care for this condition is reasonably available in the country of removal are findings of fact that are made by an Immigration Judge and reviewed on appeal under a clearly erroneous standard. 8 C.F.R. § 1003.1(d)(3)(i) (2019). The applicant has the burden of establishing these facts. Section 240(c)(4)(B) of the Act, 8 U.S.C. § 1229a(c)(4)(B) (2018). The Immigration Judge must evaluate whether an applicant's testimony regarding the seriousness of a qualifying relative's medical condition and the reasonable availability of medical care in the country of removal "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied [his or her] burden of proof." *Id.* Generally, an

---

[3] It is the applicant's burden to establish that a qualifying relative will accompany him or her to the country of removal. *See* section 240(c)(4)(B) of the Act, 8 U.S.C. § 1229a(c)(4)(B) (2018) (providing that an applicant "must comply with the applicable requirement to submit information or documentation in support of the applicant's application for relief"). *See generally Matter of Calderon-Hernandez*, 25 I&N Dec. 885, 886 (BIA 2012) (discussing the presumptions and requirements of proof regarding whether a qualifying relative child will remain in the United States or leave with the applicant); *Matter of Ige*, 20 I&N Dec. 880, 885–86 (BIA 1994) (same).

[4] Our decision today is not inconsistent with our holding in *Matter of Recinas*, 23 I&N Dec. 467, 470 (BIA 2002), that the hardship standard for cancellation of removal "is not so restrictive that only . . . those who have a qualifying relative with a serious medical condition[] will qualify for relief." We do not discount the possibility that a qualifying relative who does *not* suffer from a serious medical condition may, in light of other relevant hardship factors, experience the requisite level of hardship as a result of an applicant's removal. However, we clarify in this decision that where an applicant seeks to establish the required hardship based on a qualifying relative's medical condition, he or she must make the above showings.

applicant will lack the firsthand knowledge and medical expertise needed to provide persuasive and sufficiently specific testimony regarding the seriousness of a qualifying relative's medical condition and the availability of care in the country of removal to meet that burden. The Immigration Judge should therefore determine whether the applicant has submitted sufficient reliable evidence to corroborate his or her testimony in this regard. *See id.*

The hypothyroidism the respondent's daughter suffers may constitute a serious medical condition, particularly given the consequences if it is left untreated, but the record reflects that his daughter receives regular treatment for this condition in the United States, and there is no indication that she will be unable to continue treatment if the respondent is removed.[5] Although the respondent's partner testified that she learned from the internet that treatment for hypothyroidism costs $1,100 in Guatemala, the Immigration Judge found that the respondent presented no evidence to corroborate her testimony. *See* section 240(c)(4)(B) of the Act (providing that an Immigration Judge may require the submission of corroborating evidence, even where the testimony of an applicant or witness is credible). The Immigration Judge also reasonably determined that the basis for her testimony was inadequate to establish her assertion.[6]

Moreover, as the respondent concedes on appeal, his mother testified that she received free medical care in Guatemala and believes that it continues to be free there. In light of this testimony, the Immigration Judge was not required to accept the assertions made by the respondent and his partner regarding the cost and availability of treatment for hypothyroidism in Guatemala. *See Matter of D-A-C-*, 27 I&N Dec. 575, 579 (BIA 2019) ("An Immigration Judge 'is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record.'" (citation omitted)).

The respondent has submitted evidence reflecting that medical facilities in Guatemala provide a lower standard of medical care than facilities in the United States. However, this evidence does not show that treatment for hypothyroidism is not reasonably available in Guatemala. Moreover, it is

---

[5]  Although not at issue in this case, if a qualifying relative is receiving ongoing treatment for a serious medical condition, evidence of detrimental consequences that would result from disruption of the treatment regimen is relevant to establishing the requisite hardship.

[6]  Even if the respondent had submitted a printout from the internet indicating that medical treatment for hypothyroidism costs $1,100 in Guatemala, the Immigration Judge would still need to evaluate the relevance and reliability of the document and weigh it along with the credible testimony presented to determine whether the respondent met his burden of proof. *See* section 240(c)(4)(B) of the Act; *cf. Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (noting that an Immigration Judge erred in relying on an internet document without analyzing whether it was "a sufficiently reliable source" of information).

well settled that evidence that a qualifying relative will experience a "lower standard of living" in the country of removal, including a lower standard of medical care, "will be insufficient in [itself] to support a finding of exceptional and extremely unusual hardship." *Matter of Monreal*, 23 I&N Dec. at 63–64; *cf. Matter of Correa*, 19 I&N Dec. 130, 134 (BIA 1984) ("The fact that the medical facilities in Colombia may not be as good as they are in this country does not mean that [the applicant's] children . . . will suffer *extreme hardship* there." (emphasis added)).[7]

Further, although the Immigration Judge acknowledged that two of the respondent's children have received counseling for behavioral and emotional problems, and one of them has been diagnosed with anxiety and attention deficit disorders, there is no clear error in the Immigration Judge's findings that these are not serious ongoing medical conditions. The older of these two children was not diagnosed with any mental health, emotional, or behavioral conditions during counseling. Moreover, the record reflects that the younger child successfully completed counseling and was given coping strategies for his anxiety, and there is no indication that he has received further counseling or treatment for either his anxiety or attention deficit disorders.

There is also no clear error in the Immigration Judge's finding that if the children remain in the United States and need treatment for their conditions, they will be able to obtain it. The respondent does not argue that treatment for these conditions is unavailable in Guatemala. Nor does he meaningfully contest the Immigration Judge's finding that the son who suffers from anxiety will feel less anxious if he accompanies the respondent to Guatemala.

Finally, the Immigration Judge did not clearly err when she found that the hypertension of the respondent's mother was not serious and that she could continue to obtain treatment for this condition in the United States. The respondent's mother testified that the medical expenses stemming from her hypertension are covered by State benefits, she takes the bus to the doctor, and she is able to pick up her own prescriptions. There is also no indication that her hypertension prevents her from performing necessary tasks.

## 2. Other Hardship Considerations

With regard to the financial hardship that would allegedly result from his removal, the respondent does not contest the Immigration Judge's finding

---

[7]   Although *Matter of Correa* held that evidence of lower quality medical facilities in the country of removal was insufficient to establish "extreme hardship" to a relative for purposes of suspension of deportation under former section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1) (1994), it is instructive since the exceptional and extremely unusual hardship "standard for cancellation of removal is a *higher one* than that under the suspension of deportation statute." *Matter of Monreal*, 23 I&N Dec. at 59 (emphasis added).

that he could financially support his family if his children and partner accompany him to Guatemala. Nor does he meaningfully challenge the Immigration Judge's finding that, in the event his children and partner remain in the United States, his partner could return to work and help support the children. The respondent's mother testified that she receives Social Security benefits and has rented one of the rooms in her home for income in the past. She is currently renting space to the respondent and his family. The respondent's sister also stated that she could live with and care for the respondent's mother in the event the respondent is removed.

While the respondent's children may face fewer economic and educational opportunities in Guatemala than they would if they remained in this country, both in the short and long term, economic detriment is generally insufficient to support a finding of the required hardship. *See Matter of Andazola*, 23 I&N Dec. 319, 323 (BIA 2002). Difficulties of this nature are an unfortunate consequence of removal in many cases. The respondent has not shown that his children "would be deprived of all schooling or of an opportunity to obtain any education" in Guatemala. *Id.* Furthermore, since his children are citizens of the United States, they may return to this country later to pursue economic and educational opportunities.

Finally, we acknowledge the emotional hardship the respondent's relatives may experience as a result of their separation from him if they remain in the United States. However, we agree with the Immigration Judge that it does not rise to the level of exceptional and extremely unusual hardship. Moreover, the respondent has waived any challenge to the Immigration Judge's finding that his son, who suffers from anxiety disorder, will be less anxious if he accompanies his father to Guatemala.[8]

Considering all of the hardship factors in this case cumulatively, including the hardships that may result from the medical, economic, and emotional factors, the respondent's qualifying relatives will not experience hardship that rises to the level of extremely and exceptionally unusual. The hardship must be "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *Matter of Monreal*, 23 I&N Dec. at 65 (noting the "high level of hardship" of hardship that Congress established); *cf. Matter of Recinas*, 23 I&N Dec. 463, 472 (BIA 2002) (finding that the hardship was sufficient to warrant a grant of relief). In fact, the application of the exceptional and extremely unusual hardship standard must be "limited to

---

[8]   The respondent argues for the first time on appeal that the Immigration Judge should have considered the risk to his children's safety in Guatemala and the "derivative" hardship his qualifying relatives will experience as a consequence of the hardship his partner may face upon his removal. These arguments were not advanced or articulated below, and we will not address them. *See Matter of E-R-A-L-*, 27 I&N Dec. 767, 768 n.2 (BIA 2020).

'truly exceptional' situations." *Matter of Monreal*, 23 I&N Dec. at 62 (quoting H.R. Conf. Rep. No. 104-828 (1996)); *see also Matter of Castillo-Perez*, 27 I&N Dec. 664, 669 (A.G. 2019) (stating that cancellation of removal should be granted "only to the most deserving candidates"). Therefore, on the facts of this case, the Immigration Judge properly determined that the respondent has not established eligibility for cancellation of removal under section 240A(b)(1)(D) of the Act.[9]

## B. Withholding of Removal

We will likewise uphold the Immigration Judge's decision to deny the respondent's application for withholding of removal under section 241(b)(3)(A) of the Act. The respondent argued that he experienced past persecution in Guatemala based on his membership in two groups— (1) Guatemalan males who are accused of causing another's death; and (2) individuals targeted by family members of a drug cartel. However, the respondent does not challenge the Immigration Judge's conclusion that these groups lack validity for purposes of withholding of removal, and we consider any challenge in this regard to be waived. *See Matter of Zhang*, 27 I&N Dec. 569, 569 n.2 (BIA 2019).

The respondent also contends that he was targeted on account of his political opinion in opposition to gang activity in Guatemala. We do not agree. There is no indication that the gang members and relatives of the respondent's ex-girlfriend, who targeted him decades ago in Guatemala, were motivated to do so because he was politically or ideologically opposed to the gang, or to gang activity in general, or that the gang imputed any particular political belief to him. The respondent does not claim that he is involved in any political party or that any political activity was imputed to him. *See Matter of S-E-G-*, 24 I&N Dec. 579, 589 (BIA 2008), *clarified by Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014), *and Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014), *vacated in part and remanded on other grounds*, *Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016); *see also Barrios v. Holder*, 581 F.3d 849, 856 (9th Cir. 2009), *abrogated on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc). The record evidence suggests that gang members targeted the respondent because they sought to "increas[e] the size and influence of their gang." *Matter of S-E-G-*, 24 I&N Dec. at 589. The evidence also indicates that the relatives of the respondent's ex-girlfriend were motivated to target him because they suspected he was involved in the death of her brother. "[T]hese motivations do not constitute persecution on account of political opinion" or any valid

---

[9]   In light of this disposition, we need not address the Immigration Judge's alternative determination to deny the respondent's application in the exercise of discretion.

protected ground. *Barrios*, 581 F.3d at 856 (citation omitted); *see also Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground.").

The respondent also claims that he will experience future persecution in Guatemala based on his membership in a social group comprised of Guatemalan men who are living and working in the United States for decades and are removed. However, we agree with the Immigration Judge that this social group is not valid for purposes of withholding of removal. *See Matter of E-R-A-L-*, 27 I&N Dec. 767, 771 (BIA 2020) (reviewing the validity of a social group under a de novo standard); *see also Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1163 (9th Cir. 2013) (per curiam).

"An applicant seeking . . . withholding of removal based on his or her membership in a particular social group must 'establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Matter of E-R-A-L-*, 27 I&N Dec. at 769 (citation omitted). The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has rejected similarly defined social groups after concluding that they lacked the requisite particularity. *See Barbosa v. Barr*, 926 F.3d 1053, 1059–60 (9th Cir. 2019) (holding that a group of "individuals 'returning to Mexico [from] the United States [who] are believed to be wealthy'" is "too broad to qualify" as a valid social group (alterations in original)); *Reyes*, 842 F.3d at 1138 (same with regard to "deportees from the United States to El Salvador"); *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1229 (9th Cir. 2016) (same with regard to "imputed wealthy Americans"); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010) (per curiam) (same with regard to "returning Mexicans from the United States").

Like the groups rejected by the Ninth Circuit, the respondent's proposed group of Guatemalan men who are living and working in the United States for decades and are removed is "too amorphous, overbroad and diffuse" to satisfy the requirement of particularity because the group encompasses all males removed to Guatemala, regardless of their age, the number of decades they lived and worked in the United States, "the reasons for their removal, or the recency of their removal." *Reyes*, 842 F.3d at 1139. In addition, the respondent has not demonstrated that this group is perceived to be socially distinct in Guatemalan society; he does not point to any evidence in the record that would establish this claim. Thus, he has not demonstrated that this proposed social group is valid for purposes of establishing his eligibility for withholding of removal. *See Matter of E-R-A-L-*, 27 I&N Dec. at 769.

Finally, there is no indication that the gang members and other individuals who threatened and harmed the respondent decades ago in

Guatemala are still interested in him or would seek to do him harm. In light of the significant passage of time since the respondent was last harmed by these individuals in Guatemala and the fact that other family members who remain there have not been contacted or harmed by them since he left over 15 years ago, the Immigration Judge did not clearly err when she found that the respondent fears random crime and violence in that country, rather than harm inflicted on account of his proposed social group. *See Zetino*, 622 F.3d at 1016. We will therefore affirm the Immigration Judge's finding that the respondent has failed to demonstrate, in accordance with applicable circuit precedent, that it is more likely than not that a valid protected ground will be "a reason" for any persecution he may experience in Guatemala. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

## C. Convention Against Torture

Finally, we will uphold the Immigration Judge's decision to deny the respondent's application for protection under the Convention Against Torture. *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a) (2019). As noted, it has been nearly two decades since the respondent was last threatened in Guatemala, and he has not shown that the gang members or other individuals who threatened and harmed him in that country are still interested in locating him today, let alone torturing him. *See Xiao Fei Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011) (upholding the denial of an application for protection under the Convention Against Torture where the torture claim was speculative and not established). Further, although the respondent has submitted generalized evidence of violence and crime in Guatemala that is not particular to him, this evidence is insufficient to establish that it is more likely than not that he will be tortured in that country by or with the consent or acquiescence of a Guatemalan official or an individual acting in an official capacity. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam). Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $799 for each day the respondent is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2019).