# Matter of E-R-A-L-, Respondent

*Decided February 10, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien's status as a landowner does not automatically render that alien a member of a particular social group for purposes of asylum and withholding of removal.

(2) To establish a particular social group based on landownership, an alien must demonstrate by evidence in the record that members of the proposed group share an immutable characteristic and that the group is defined with particularity and is perceived to be socially distinct in the society in question.

(3) The respondent's proposed particular social groups—comprised of landowners and landowners who resist drug cartels in Guatemala—are not valid based on the evidence in the record.

FOR RESPONDENT: John Ayala, Esquire, Burbank, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jonathan Forstil, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Acting Chairman; CREPPY and HUNSUCKER, Board Members.

MALPHRUS, Acting Chairman:

In a decision dated April 18, 2017, an Immigration Judge denied the respondent's applications for asylum and withholding of removal pursuant to sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2012), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), but granted his request for voluntary departure. The respondent has appealed from that decision. The appeal will be dismissed, and voluntary departure will be reinstated.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala who is present in the United States without being admitted or paroled.  After he was placed in removal proceedings, the respondent applied for asylum and related forms of relief and protection from removal.  On November 6, 2014, the Immigration Judge denied his applications, and the respondent appealed.

On May 24, 2016, we remanded the record to the Immigration Court for further proceedings.  At the remanded proceedings, the Immigration Judge accepted additional evidence, including proof of land ownership by the respondent's father, a December 2011 report titled "Criminal Organizations and Illicit Trafficking in Guatemala's Border Communities," and the Department of State 2015 country report on human rights practices in Guatemala.

The respondent testified below that he and his family lived in El Progreso, Guatemala.  There, his family operated a farm on approximately 2 square kilometers of land that the respondent's grandfather had given to his father.  The respondent and his four siblings farmed the land when they were not in school or studying.

On two occasions in 2008 members of the "Cuaches"[1] drug cartel approached the respondent and his father and threatened to kill them if they did not use their land to cultivate marijuana for the cartel.  Approximately a month after the respondent's second encounter with the cartel, his father was fatally shot.

According to the respondent, the cartel also threatened his godfather and ordered him to cultivate drugs on his land.  His godfather was killed in 2007.  In 2008, the cartel shot and killed the godfather's 13-year-old son in front of the child's grandparents.  The child's grandparents left the area, and the cartel appropriated his godfather's land.  On September 1, 2008, the respondent left Guatemala and traveled to Mexico.  He entered the United States on March 2, 2009.  After the respondent entered this country, his family abandoned their land in Guatemala.  His mother and sister have relocated to another part of Guatemala where they live without incident.

On remand, the respondent proposed the following social groups: (1) landowners, (2) landowners who resist drug cartels, and (3) members of the respondent's family.[2]  The Immigration Judge concluded that neither

---

[1]  In his brief, the respondent provides two alternative spellings for the cartel—"Cuaches" and "Quaches."

[2]  For the first time on appeal, the respondent articulates two new social groups comprised of "title holding land owners who were threatened with death unless they allowed drug traffickers to cultivate marijuana in their land" or "rural land owners."  Because these

group establishes the respondent's eligibility for asylum or withholding of removal under the Act. The Immigration Judge also concluded that the respondent was ineligible for protection under the Convention Against Torture. On appeal, the respondent challenges the Immigration Judge's conclusions in this regard and argues that his applications should be granted. For the reasons set forth below, we will affirm the Immigration Judge's decision.

## II. ANALYSIS

An applicant seeking asylum or withholding of removal based on his or her membership in a particular social group must "establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *see also Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016).[3]

### A. Asylum

#### 1. Landownership as a Social Group

In *Matter of Acosta*, we indicated that "land ownership" may qualify as "a common, immutable characteristic" that defines a particular social group. 19 I&N Dec. 211, 233 (BIA 1985), *modified on other grounds*, *Matter of Mogharrabi*, 19 I&N Dec. 439, 441 (BIA 1987). However, to establish that landownership is an immutable characteristic, an applicant must demonstrate

---

groups were not articulated or advanced below, we will not address them. *See Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 192 (BIA 2018); *see also Honcharov v. Barr*, 924 F.3d 1293, 1297 (9th Cir. 2019) (per curiam) (holding that we "did not err when [we] declined to consider . . . proposed particular social groups that were raised for the first time on appeal").

3    The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, and most other circuits have deferred to or approved of our three-part test for establishing a particular social group, including the requirements that a social group be defined with particularity and be socially distinct. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019); *S.E.R.L. v. Att'y Gen. U.S.*, 894 F.3d 535, 550 (3d Cir. 2018); *Reyes*, 842 F.3d at 1135; *Ngugi v. Lynch*, 826 F.3d 1132, 1138 (8th Cir. 2016); *Gonzalez v. U.S. Att'y. Gen.*, 820 F.3d 399, 405 (11th Cir. 2016) (per curiam); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497–98 (6th Cir. 2015); *Oliva v. Lynch*, 807 F.3d 53, 61 (4th Cir. 2015); *Paiz-Morales v. Lynch*, 795 F.3d 238, 243–44 (1st Cir. 2015); *Rodas-Orellana v. Holder*, 780 F.3d 982, 990–91 (10th Cir. 2015); *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014). *But see W.G.A. v. Sessions*, 900 F.3d 957, 964 (7th Cir. 2018) ("Whether the Board's particularity and social distinction requirements are entitled to . . . deference remains an open question in this circuit.").

that his or her ownership of land is "beyond the [applicant's] power . . . to change or is so fundamental to [his or her] identity or conscience that it ought not be required to be changed." *Id.* We further explained that harm against a landowner will only qualify as "persecution" for purposes of asylum if it is shown that landownership was a "characteristic [that the] persecutor sought to overcome." *Id.* at 222.

Moreover, even if a group of landowners shares an immutable characteristic, that group must also be defined with sufficient particularity and be perceived as distinct by the society in question. *See Reyes*, 842 F.3d at 1131. In other words, even in cases where the ownership of land renders a group immutable, its ultimate validity will depend on whether the particular facts, country and societal conditions, and individual circumstances establish "whether the group is discrete or amorphous, and whether the society in question considers 'landowners' as a significantly distinct group within the society." *Matter of M-E-V-G-*, 26 I&N Dec. at 241.

We have previously explained that

> in an underdeveloped, oligarchical society, "landowners" may be a sufficiently discrete class to meet the criterion of particularity, and the society may view landowners as a discrete group, sufficient to meet the social distinction test. However, such a group would likely be far too amorphous to meet the particularity requirement in Canada, and Canadian society may not view landowners as sufficiently distinct from the rest of society to satisfy the social distinction test.

*Id.*

Thus, where the particular facts of a case indicate that landownership is linked with another protected ground—for example, political opinion, by exclusively limiting participation in governance and other political activities to landowners—a group of landowners is more likely to have definable boundaries and be viewed by the society in question as a distinct class of persons. *See id.*; *cf. Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015) (recognizing "that persecutors are more likely to identify individual family members as part of a particular social group when familial ties are 'linked to race, religion, or political affiliation'" (citation omitted)). The same is true for a group of landowners who pose a threat to a cartel and its interests, given the group's social prominence or significance, political or otherwise.

Accordingly, an alien's status as a landowner does not automatically render that alien a member of a particular social group for purposes of asylum and withholding of removal. To establish a particular social group based on landownership, an alien must demonstrate by evidence in the record that members of the proposed group share an immutable characteristic and that

the group is defined with particularity and is perceived to be socially distinct in the society in question.[4]

We agree with the Immigration Judge that the respondent has not demonstrated that his proposed groups—landowners and landowners who resist drug cartels in Guatemala—are valid.[5] *See Matter of W-G-R-*, 26 I&N Dec. 208, 210 (BIA 2014) (stating that "the ultimate determination whether a particular social group has been established is a question of law," which is reviewed under a de novo standard), *vacated in part and remanded on other grounds*, *Reyes*, 842 F.3d 1125; *see also Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1163 (9th Cir. 2013) (per curiam). Neither group is defined by an immutable characteristic that is "beyond the [respondent's] power . . . to change or is . . . fundamental to [his] identity." *Matter of Acosta*, 19 I&N Dec. at 233. The respondent does not meaningfully dispute the Immigration Judge's finding that his ownership of his family's land could cease through "giving up" or selling that property. As noted, moreover, the respondent's family abandoned their land after the respondent left Guatemala.

The respondent's proposed social groups are also amorphous and lack particularity because they can encompass landowners of varying backgrounds, circumstances, and motivations. Arguably, his proposed groups could encompass anyone who owns any amount or type of land in Guatemala. In fact, the respondent conceded that the cartel wanted his family's land because it was conducive to growing drugs, and there is no indication that their land was unique in this respect. *See Matter of A-B-*, 27 I&N Dec. 316, 335 (A.G. 2018) ("Social groups defined by their vulnerability to private criminal activity likely lack the particularity required . . . , [where] broad swaths of society may be susceptible to victimization."), *abrogated on other grounds by Grace v. Whitaker*, 344

---

[4] The Ninth Circuit and other circuits have recognized "that landownership may be the basis of a particular social group." *Cordoba v. Holder*, 726 F.3d 1106, 1114 (9th Cir. 2013) (collecting cases). However, *Cordoba* and decisions like it do not stand for the proposition that owning land, in and of itself, is sufficient to establish membership in a valid particular social group. In fact, the court in *Cordoba* found that the alien had established the validity of his landowner-based group in light of evidence, including expert testimony, suggesting that wealthy landowners in his home country are specifically targeted for persecution and that he and his family are distinguished landowners in their region. *Id.* at 1114–15. Thus, *Cordoba* and similar decisions stand for the proposition "that landownership *may* be the basis of a particular social group," if the group of landowners in question is defined by an immutable characteristic and is sufficiently particular and socially distinct. *Id.* at 1114 (emphasis added).

[5] On remand, the respondent submitted evidence that legal ownership of his family's land transferred to him following his father's death. For purposes of our analysis, we will assume without deciding that the respondent is the sole heir of his father's land and is a member of the above social groups.

F. Supp. 3d 96, 127 (D.D.C. 2018), *appeal docketed sub nom.*, *Grace v. Barr*, 19-5013 (D.C. Cir. Jan. 30, 2019). The respondent also does not specify what degree of resistance against the cartels a landowner must engage in before he or she will be considered a member of his proposed groups. Nor does he specify what must motivate a landowner to resist the cartels before he or she will be included in his groups. Because the characteristics defining the respondent's proposed groups provide no "clear benchmark for determining who falls within the group," these groups lack particularity. *Id.* (citation omitted).

Additionally, the respondent has not identified record evidence demonstrating that his proposed groups are perceived as "significantly distinct group[s]" within the society in question—namely, El Progreso, Guatemala.[6] *Matter of M-E-V-G-*, 26 I&N Dec. at 241; *see also id.* at 242 ("[T]he persecutors' perception is not itself enough to make a group socially distinct . . . ."). The respondent asserts that rural Guatemalan landowners are vulnerable to cartels that wish to use their land to cultivate drugs. However, the fact that these landowners may be vulnerable to theft, coercion, or other criminal activities does not establish that those living in El Progreso or the cartels themselves perceive members of the respondent's proposed groups as being "set apart, or distinct, from other persons within the society in some significant way." *Id.* at 238. Accordingly, the respondent's proposed groups—landowners and landowners who resist drug cartels in Guatemala— are not valid based on the evidence in the record.

Even if the respondent's proposed social groups were valid, he has not demonstrated the required nexus between the harm he fears and his status as a Guatemalan landowner.[7] A persecution claim cannot be established absent proof that the cartel targeted him or other members of his family based on their ownership of land in that country. *See Matter of A-B-*, 27 I&N Dec. at 338 ("Establishing the required nexus between . . . persecution and membership in a particular social group is a critical step for victims of private crime who seek asylum.").

---

[6]  The respondent cites an excerpt from a December 2011 report that discusses "land owner problems" in Guatemala. The excerpt cited relates to a rural border community located in a completely different region of Guatemala and discusses issues relating to landownership that are unique to that area's history, traditions, and location. Neither this report nor the other documentary evidence in the record discusses conditions in El Progreso.

[7]  Contrary to the respondent's assertions, our order remanding the record to the Immigration Judge did not state that the respondent was targeted as a landowner and that he only needed to establish evidence of his ownership of the property on remand. We specifically remanded the record "to allow the Immigration Judge to evaluate the existence of the [respondent's] claimed particular social group[s]" in accordance with our precedents and to evaluate whether any harm the respondent experienced was "on account" of those groups. Thus, the issue of nexus is properly before us.

The country conditions evidence reflects that cartels engage in criminal activity in Guatemala based on their desire to increase their revenue, power, and territorial control.  The criminal activity at issue in this case is drug cultivation and distribution, rendering vulnerable those, like the respondent, who have a resource—in this case, land—that the cartels wish to exploit in order to benefit their operations.  Such circumstances are not substantially different from a situation where a criminal is motivated by the theft of desired goods.  It is well settled, however, that such a situation does not qualify as persecution on account of a particular social group.  *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft . . . bears no nexus to a protected ground.").

The respondent's proposed social groups necessarily focus on his status as a landowner.  But the cartel's actions reflect that its focus was on the respondent's land itself, not his landowner status.  Although ownership of his family's land has transferred to the respondent, his family abandoned this property after the respondent left Guatemala, and there is no indication that the cartel has targeted the respondent or his family since.  From this evidence, the Immigration Judge could reasonably infer that the cartel's motive was their desire to appropriate the respondent's land so that it could cultivate and distribute drugs.  *See Ruiz-Escobar v. Sessions*, 881 F.3d 252, 260 (1st Cir. 2018) (upholding a similar "inference" where there was no indication that drug traffickers had any "continuing interest in harming [an alien or his] family once they gained possession of th[eir] land"); *see also Matter of J-C-H-F-*, 27 I&N Dec. 211, 217 (BIA 2018) (holding that an "Immigration Judge may make 'reasonable inferences from direct and circumstantial evidence'" (citation omitted)).  The Immigration Judge could also reasonably infer from this evidence that the respondent's status as a landowner was merely "incidental, tangential, or subordinate" to the cartel's motives. *Matter of A-B-*, 27 I&N Dec. at 338.

Moreover, the respondent's status as a landowner who has title to, but not possession of, his family's land does not, in and of itself, pose a threat to the cartel.  The respondent has not expressed any intent to reclaim his family's property in Guatemala.  If he attempts to do so, against the cartel's wishes, the cartel may retaliate against him because it will perceive him as interfering with or threatening its "criminal enterprises and territorial power." *Matter of S-E-G-*, 24 I&N Dec. 579, 587 (BIA 2008), *clarified by Matter of M-E-V-G-*, 26 I&N Dec. 227, *and Matter of W-G-R-*, 26 I&N Dec. 208.  In such a case, his status as a landowner would, again, be merely tangential or incidental to the cartel's motives. *See Matter of A-B-*, 27 I&N Dec. at 339 (holding that a "criminal gang may target people because they have money or property within the area where the gang operates," but that "does not make the gang's

victims persons who have been targeted 'on account of' their membership in any social group").

Thus, the Immigration Judge did not clearly err when he found that the cartel was not motivated by its desire to overcome the respondent's membership in groups comprised of landowners and landowners who resist cartels in Guatemala. *Matter of Acosta*, 19 I&N Dec. at 222. Instead, when it sought to appropriate land from the respondent and his family, the cartel was motivated by greed and a desire to expand its territory and sustain its local criminal enterprise. *Matter of S-E-G-*, 24 I&N Dec. at 587. We will therefore affirm the Immigration Judge's conclusion that the respondent has not experienced past persecution and has not demonstrated a well-founded fear of future persecution on account of his landownership in Guatemala.

## 2. Family as a Social Group

The respondent also claims that he has been and will be persecuted on account of his membership in a particular social group comprised of members of his family. In *Matter of L-E-A-*, 27 I&N Dec. 581, 582, 586 (A.G. 2019), the Attorney General concluded that "an alien's family-based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor," and it is "defined with sufficient particularity."[8] The Attorney General explained that, "in the ordinary case, a nuclear family will not . . . constitute a 'particular social group' because most nuclear families are not inherently socially distinct." *Id.* at 589. The respondent has not shown that his family is socially distinct or was viewed as anything besides a typical nuclear family in Guatemala.[9]

---

[8]  In this decision, the Attorney General overruled in part our holding in *Matter of L-E-A-*, 27 I&N Dec. 40 (BIA 2017), to the extent we had treated "family" as a valid social group. Although the Attorney General recognized contrary precedent from the Ninth Circuit, which had found "family" to be a valid social group, he invoked his authority to interpret the ambiguous term "particular social group" under the Act in a different manner. *See Matter of L-E-A-*, 27 I&N Dec. at 592 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)). Therefore, to the extent that the respondent argues that "a family in and of itself can be a particular social group," even if it lacks particularity and social distinction, that argument is squarely foreclosed by the Attorney General's decision in *L-E-A-*.

[9]  The Attorney General's holding in *Matter of L-E-A-* that a nuclear family must be viewed by society as something besides a typical nuclear family to establish social distinction supports our conclusion that a group of landowners must be viewed by society as something beyond a group of individuals who have landowner status before it will be regarded as socially distinct.

Moreover, even if the respondent's family-based group were valid, his membership in this group "does not necessarily mean that any harm inflicted or threatened by the [cartel was] because of, or on account of, [his] family membership." *Matter of L-E-A-*, 27 I&N Dec. 40, 43 (BIA 2017), *overruled on other grounds by Matter of L-E-A-*, 27 I&N Dec. at 596–97.[10] The evidence in this case does not demonstrate that the deaths of the respondent's father, godfather, or godfather's son were linked by family ties. Nor does it establish that these deaths were linked to the respondent, such that they may be considered persecution of the respondent on account of his family membership. *See id.* at 45; *see also Navas v. INS*, 217 F.3d 646, 659 n.18 (9th Cir. 2000) (stating that "the death of one family member does not [automatically] trigger a sweeping entitlement to asylum eligibility for all members of her extended family" (alteration in original) (citation omitted)).

Significantly, the respondent concedes on appeal that "it was [his family's] land and solely th[is] land that was the motivation to persecute [him] and his family." As noted, the Immigration Judge did not clearly err when he found that the cartel wished to appropriate this land so that it could cultivate and distribute drugs. The cartel's actions against the respondent and his father were merely "a means to [achieving this] end," the respondent's family membership was tangential and incidental to this motive, and there is no indication that the cartel harbored any particular animus toward the respondent and his family. *Matter of L-E-A-*, 27 I&N Dec. at 45 (stating that "the fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish [an asylum] claim").

As noted, moreover, the respondent and his family have abandoned this land in Guatemala. The respondent has not expressed any interest in reclaiming this property, and there is no indication that the cartel has continued to threaten the respondent or the members of his family who continue to reside in Guatemala. These factors undermine the respondent's claim that the cartel will target him in the future based on his family membership. *See Tamang v. Holder*, 598 F.3d 1083, 1094 (9th Cir. 2010) ("[F]ear of future persecution 'is weakened, even undercut, when similarly-situated family members' living in the [alien's] home country are *not* harmed." (citation omitted)).

We will therefore uphold the Immigration Judge's conclusion that the respondent has not experienced past persecution and has not demonstrated a well-founded fear of future persecution in Guatemala on account of his

---

[10] The Attorney General expressly left the portion of our decision in *Matter of L-E-A-* relating to nexus undisturbed. *Matter of L-E-A-*, 27 I&N Dec. at 597. As a consequence, we may rely on that portion of our decision in *L-E-A-*.

family membership.  Consequently, the Immigration Judge properly denied his application for asylum under section 208(b)(1)(A) of the Act.

## B.  Withholding of Removal

Based on the foregoing analysis, we will likewise uphold the Immigration Judge's finding that the respondent has failed to demonstrate, in accordance with applicable circuit precedent, that it is more likely than not that a valid protected ground will be "a reason" for any persecution he may experience in Guatemala. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).  Accordingly, the respondent has not established his eligibility for withholding of removal under section 241(b)(3)(A) of the Act.

## C.  Convention Against Torture

Finally, we agree with the Immigration Judge that the respondent has not established his eligibility for protection under the Convention Against Torture.  *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a) (2019).  The respondent argues that he will not be safe anywhere in Guatemala because title to his family's land has transferred to him and his "name . . . is attached to [the] title," making him vulnerable "to harm in perpetuity [from] those who have taken [his] land adversely."  However, this argument relies on the unestablished premise that the respondent intends to hold and exercise his title to his family's land.  It also depends on the proposition that his "legal title" to this property will, in and of itself, make him a target of the cartel.  As noted, there is no indication that the cartel has any continued interest in locating the respondent, let alone in torturing him, based on the fact that he holds the title to his family's property.  *See Xiao Fei Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011) (upholding the denial of an application for Convention Against Torture protection where the torture claim was speculative and not established).  Thus, the respondent has not demonstrated that each step in his proposed hypothetical chain of events is more likely than not to occur.  *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006).  Accordingly, the respondent's appeal will again be dismissed.  The Immigration Judge's grant of voluntary departure will be reinstated.

**ORDER:**  The appeal is dismissed.

**FURTHER ORDER:**  Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart the United States, without expense to the Government, within 30 days from the date of this order or any extension beyond that time as may be granted by the Department of Homeland Security ("DHS").  *See* section 240B(b) of the Act,

8 U.S.C. § 1229c(b) (2018); *see also* 8 C.F.R. § 1240.26(c), (f) (2019).  In the event the respondent fails to voluntarily depart the United States, the respondent shall be removed as provided in the Immigration Judge's order.

**NOTICE:**  If the respondent fails to voluntarily depart the United States within the time period specified, or any extensions granted by the DHS, the respondent shall be subject to a civil penalty as provided by the regulations and the statute and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, and 1259 (2018).  *See* section 240B(d) of the Act.

**WARNING:**  If the respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended.  If the grant of voluntary departure is automatically terminated upon the filing of a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply.  *See* 8 C.F.R. § 1240.26(e)(1).

**WARNING:**  If, prior to departing the United States, the respondent files any judicial challenge to this administratively final order, such as a petition for review pursuant to section 242 of the Act, 8 U.S.C. § 1252 (2018), the grant of voluntary departure is automatically terminated, and the alternate order of removal shall immediately take effect.  However, if the respondent files a petition for review and then departs the United States within 30 days of such filing, the respondent will not be deemed to have departed under an order of removal if he provides to the DHS such evidence of his departure that the Immigration and Customs Enforcement Field Office Director of the DHS may require and provides evidence DHS deems sufficient that he has remained outside of the United States.  The penalties for failure to depart under section 240B(d) of the Act shall not apply to an alien who files a petition for review, notwithstanding any period of time that he remains in the United States while the petition for review is pending.  *See* 8 C.F.R. § 1240.26(i).