NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0569n.06

No. 21-3263

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 07, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MELCHOR GARCIA-LOPEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| v. | ) | THE DECISION OF THE UNITED |
| | ) | STATES BOARD OF |
| MERRICK B. GARLAND, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: SUTTON, Chief Judge; SILER and READLER, Circuit Judges.

SILER, Circuit Judge. Melchor Garcia-Lopez (Garcia) petitions for review of the Board of Immigration Appeals' (BIA) and Immigration Judge's (IJ) decisions denying his application for cancellation of removal from the United States. As Garcia has not established "exceptional and extremely unusual hardship" to his mother or daughter resulting from his removal, we **DENY** his petition.

In 2013, Garcia received a Notice to Appear charging him with removability as a noncitizen present in the United States without being admitted or paroled. After conceding removability on the ground charged, Garcia sought cancellation of removal. "The cancellation-of-removal statute allows the Attorney General to cancel the removal of an immigrant if the immigrant satisfies four eligibility requirements[,]" only one of which is at issue here: Garcia must establish "'that removal would result in exceptional and extremely unusual hardship to' a qualifying relative," here his mother or daughter. *Singh v. Rosen*, 984 F.3d 1142, 1147, 1151 (6th Cir. 2021) (quoting 8 U.S.C. § 1229b(b)(1)). Both the IJ and BIA concluded that Garcia failed to satisfy this requirement.

Case No. 21-3263, *Garcia Lopez v. Garland*

Garcia, a Mexican native, resides in Tennessee and manages a Mexican restaurant. His sixty-four-year-old mother, Maria de Jesus Lopez-Andrade (Lopez), has lived with him for two and a half years.[1] Lopez is diagnosed with hypertension, hyperlipidemia, Type 2 diabetes, depression, and is treated for the effects of fluid retention and sleeplessness. Her conditions require regular appointments with her physician and several prescription medications. Lopez does not have health insurance, and, due to her age and health conditions, is unemployed. She does not receive government assistance, but instead relies on Garcia for financial support. Garcia pays for her medical costs as well, and, because Lopez has trouble leaving the apartment, he takes her to doctors' appointments. Lopez has eleven other children, all of whom reside in Alabama. She has one son and one daughter who are citizens and one son who is a lawful permanent resident; her daughter successfully petitioned for Lopez to become a lawful permanent resident in 2010. About twice a month, Garcia and Lopez travel to Alabama to visit her children and grandchildren. For a while, Lopez resided with one of her other sons in Alabama, but eventually she moved in with Garcia after her other son married and lost the time and money to take care of her. If Garcia were removed to Mexico, Garcia and Lopez testified that Lopez would return with him, where they could reside in a small house she owns in Jalisco.

Garcia also has a ten-year-old citizen daughter who resides in Nebraska with Garcia's ex-wife. Garcia pays his ex-wife $300 per month in child support without a court order and sees his daughter every year during the summer for two months. Garcia maintains a close relationship with his daughter and speaks with her regularly throughout the year. If Garcia were removed, his daughter would remain in Nebraska with her mother.

---

[1] All dates, locations, and time periods are described as they were on the date of Garcia's cancellation of removal hearing: July 18, 2016.

Although circuit courts have jurisdiction to review final orders of removal, 8 U.S.C. § 1252(a)(1), "no court shall have jurisdiction to review" judgments regarding discretionary relief, including cancellation of removal, *Id.* § 1252(a)(2)(B). The only exception is for "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). For purposes of this statute, "questions of law" also includes "the application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, —— U.S. ——, 140 S. Ct. 1062, 1068 (2020). Accordingly, we have jurisdiction to review the "ultimate hardship conclusion." *Singh*, 984 F.3d at 1150.

Deciding whether this mixed question is reviewable turns on the substance of the claim, not the label placed on it by the petitioner. *Id.* at 1149. For example, we "still cannot review any of the factual findings underlying" the hardship determination. *Id.* at 1149. We recently recognized that "[a]lthough 'our review of the conclusion likely should be deferential,' this court has not yet determined what standard of review applies in this type of case." *Seidu v. Garland*, --- F. App'x ---, ---, 2021 WL 4191275, at *2 (6th Cir. Sept. 15, 2021) (citation omitted) (quoting *Singh*, 984 F.3d at 1154). The parties disagree about the standard of review, but like the panels before us, we need not resolve this issue because the unreviewable factual findings allow only one result. *See, e.g.*, *Araujo-Padilla v. Garland*, 854 F. App'x 646, 649 (6th Cir. 2021); *Rodriguez-Salas v. Garland*, 849 F. App'x 582, 585 (6th Cir. 2021). Finally, "where, as here, the BIA 'adopts the IJ's decision and supplements that decision with its own comments,' we review both opinions." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293 (6th Cir. 2016) (quoting *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011)).

Garcia raises several challenges to the decisions below but does not dispute the legal standard. Garcia must "provide evidence of harm to his spouse, parent, or child substantially beyond that which ordinarily would be expected to result from" his removal. *Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (B.I.A. 2001); *see also Araujo-Padilla*, 854 F. App'x at 649. This is a "very

high" bar to relief. *Andazola-Rivas*, 23 I. & N. Dec. 319, 322 (B.I.A. 2002). Congress intended such relief "to be limited to 'truly exceptional,'" and "very uncommon" situations. *See Monreal-Aguinaga*, 23 I. & N. Dec. at 59–62 (citation omitted). The factors to consider include the ages, health, and circumstances of the qualifying relatives; family and community ties in the United States and abroad; and any adverse conditions in the country of return to the extent that they affect qualifying relatives. *Id.* at 63. These factors must be "considered in the aggregate," and any factors relating to Garcia may "only be considered insofar as they may affect the hardship" of his daughter or mother. *Id.* at 63–64; *see also Gonzalez Recinas*, 23 I. & N. Dec. 467, 472–73 (B.I.A 2002).

Garcia claims the BIA failed to consider a litany of facts that show that his mother would suffer medical hardship if Garcia returned to Mexico. Contrary to Garcia's assertion, both the IJ and BIA explicitly considered the majority of these facts, and any further parsing of the record is unwarranted.

Garcia also argues the BIA incorrectly applied its precedent in *J-J-G*, 27 I. & N. Dec. 808 (B.I.A 2020), which held that when a claim is based on medical hardship, "an applicant needs to establish that the relative has a serious medical condition and, if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country." *Id.* at 811. But it is "the applicant's burden to establish that a qualifying relative will accompany him" to the country. *Id.* at 811 n.3. Garcia claims the IJ failed to consider Lopez's substantial medical needs and the inadequate medical care in Mexico. The gist of his argument, however, is that we should overturn the IJ's factual finding. From the beginning, the IJ and BIA did not believe Lopez would return with Garcia, and even still, both found that Garcia did not show that Lopez's other eleven children in the United States would desert her or that she would go without medical treatment in Mexico. We cannot disturb these findings,

*see Singh*, 984 F.3d at 1155, and, therefore, Garcia has not proved that Lopez would suffer substantial medical hardship upon the return to Mexico.

Garcia contends the BIA also failed to recognize Lopez's financial hardship if Garcia were removed. But this argument depends on whether Lopez would return with Garcia and, further, whether Garcia could find a job in Mexico. Again, the IJ did not believe Lopez would return to Mexico. Garcia contests this finding because Lopez explained that her children in the United States have families of their own and would not support her. But Lopez never asked them. And notably, one of her daughters signed an affidavit of support in favor of Lopez's status as a lawful permanent resident, promising to support Lopez if she becomes a public charge. We do not agree, as Garcia argues, that the affidavit of support imposes merely a "speculative" or "optional" obligation on Lopez's daughter. *See generally* 8 U.S.C. § 1183a (establishing that a sponsor agrees to "maintain the sponsored alien at an annual income" of 125 percent of the poverty line in a "legally enforceable" agreement). At a minimum, the affidavit of support was relevant to whether Garcia showed that Lopez would suffer financial hardship upon his removal. And as to whether Garcia could find a job in Mexico to support Lopez: the BIA and IJ noted Garcia's experience working in Mexican restaurants and found that Garcia only alleged that restaurants in Mexico were smaller than those in the United States but did not show how this would affect his ability to find a job. Garcia has not shown that Lopez will suffer financial hardship based, at least in part, on his inability to support her in Mexico. *See, e.g., Rodriguez-Salas*, 849 F. App'x at 585 ("But Rodriguez-Salas had not shown that he would be unable to work in Mexico given his prior work experience in construction and farming."). In fact, Lopez owns a house in Mexico, where she and Garcia can reside upon his removal. Absent any further evidence, at most Lopez shows some financial detriment to returning with Garcia, but nothing more. *See Andazola-Rivas*, 23 I. & N.

Dec. at 323 ("[I]t has long been settled that economic detriment alone is insufficient to support even a finding of extreme hardship.").

In a similar vein, Garcia argues that he would be unable to continue supporting his daughter from Mexico, and that without his monthly child support payments, his ex-wife could not support her. Once again, Garcia's argument hinges on his contention that he would be unable to find a job in Mexico, which was not established below. *Cf. Ramirez-Garcia v. Garland*, No. 20-4005, 2021 WL 3017274, at *3 (6th Cir. July 16, 2021) ("When asked whether he thought he could support his children working in the fields, Ramirez testified only, 'Well, considering the economy right now it would be pretty hard[,]' not that he would be unable to find work." (alteration in original)). Otherwise, as Garcia's daughter would remain in Nebraska in the care of her mother, Garcia failed to show she would suffer exceptional and extremely unusual financial hardship upon his removal.

Garcia maintains the BIA also failed to consider Lopez's emotional and psychological hardship. Garcia primarily argues that Lopez's depression would worsen if she were forced to return to Mexico or risk becoming homeless in the United States. Not to belabor the point, but the findings below discounted Lopez's claim that she would return to Mexico—or ever become homeless—as her other children could support her while she remained in the United States. At most, then, Lopez would suffer emotional hardship that ordinarily accompanies deportation of an alien with close family members in the United States. The same is true for Garcia's argument that a child losing her father is exceptional and extremely unusual hardship. "Unfortunately, separation is not 'exceptional and extremely unusual' hardship in removal cases." *Seidu*, --- F. App'x at ---, 2021 WL 4191275, at *2; *see also Araujo-Padilla*, 854 F. App'x at 651 ("Araujo points us to testimony in the record that his then-fifteen-year-old daughter had shown some signs of *depression* due to his impending removal . . . . However, like the BIA, we cannot say that this hardship is

'substantially different from, or beyond, that which would normally be expected . . . .'" (emphasis added)). We see no error in the BIA's determination on this issue.

Garcia claims the IJ disregarded BIA precedent in *Gonzalez Recinas,* 23 I. & N. Dec. 467 (B.I.A. 2002), by failing to consider that he may not be able to immigrate into the United States. On appeal, the BIA considered this objection and held that it did not interpret *Gonzalez Recinas* to mandate an express assessment of the issue in every removal case, but even still, the BIA assumed that Garcia lacked an alternative means of immigrating to the United States and held that this, alone, did not establish error in the IJ's overall determination. *Cf. Araujo-Padilla*, 854 F. App'x at 651 ("The Board acknowledged Araujo's argument regarding his inability to 'immigrate to the United States in the future' and was 'unpersuaded' that this could 'change the outcome of his proceedings.' There was no need for the Board to say more."). Considering that Garcia failed to show that his daughter or mother would be unsupported after his removal, Garcia's lack of options to immigrate into the United States does not add much. *See id*.

In addition to his arguments regarding the ultimate hardship conclusion, Garcia argues the IJ violated his Fifth Amendment right to due process. Garcia maintains that the IJ made "several presumptions, based on outdated beliefs" and that the IJ's reasoning that simply "because there are medical services available in the United States and Ms. Lopez has a home in Mexico, the hardship is not met[,] is totally unrealistic and extremely weak, and legally wrong." Garcia's attempt to "repackage" his challenge to the BIA's hardship determination is unsuccessful. *Id*. Other than disputing the findings below, Garcia does not allege an error of constitutional magnitude in his cancellation proceedings and, therefore, we reject his due process claim.

**PETITION DENIED.**