**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JOSE DAVID RUIZ-NAVA,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 23-9606
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Jose Ruiz-Nava petitions for review of a Board of Immigration Appeals

("BIA") decision affirming an immigration judge's ("IJ") rulings denying (1) a

continuance to obtain counsel and provide corroborating evidence and

(2) cancellation of removal for failure to establish exceptional and extremely unusual

hardship to his family members.  Exercising jurisdiction under 8 U.S.C. § 1252, we

deny the petition.

_____

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Factual History*

Mr. Ruiz-Nava, a native and citizen of Mexico, legally entered the United States in 1993 as a nonimmigrant visitor, but he overstayed his authorization and never left the country.

### B. *Procedural History*

In 2006, the Department of Homeland Security ("DHS") initiated removal proceedings against Mr. Ruiz-Nava. He applied for cancellation of removal.

### 1. First Removal Hearing

On the DHS's and Mr. Ruiz-Nava's motions, as well as *sua sponte*, the immigration court scheduled, rescheduled, and continued proceedings in Mr. Ruiz-Nava's case 13 times until 2010, when an IJ found him ineligible for cancellation of removal.

### 2. First Appeal and Remand

Mr. Ruiz-Nava appealed to the BIA, which remanded the case to the IJ to make factual findings about his removability. In October 2017, the immigration court scheduled Mr. Ruiz-Nava's remanded cancellation merits hearing for September 27, 2019. Since the remand, the immigration court scheduled, rescheduled, and continued the remand proceedings 22 times.

### 3. Second Removal Hearing

Mr. Ruiz-Nava's attorneys withdrew in March 2019 and did not give him his case file until July 2019. In July 2019, an IJ continued a preliminary hearing because

the IJ did not "have time to finish [Mr. Ruiz-Nava's] case," commenting that this "w[ould] give [Mr. Ruiz-Nava] more time to get an attorney" and "take care of any issues in [his] case." AR, Vol. I at 193.

On September 30, 2019, over 13 years since the DHS initiated removal proceedings, another IJ held a cancellation merits hearing, which had been rescheduled from September 27, 2019. At the hearing, Mr. Ruiz-Nava presented a visa petition that his wife had filed on his behalf as well as documents and invoices from his prior attorneys. The IJ accepted them "for identification only," and not "into the record as [an] exhibit[]." *Id.* at 206. Mr. Ruiz-Nava explained there was "some more paperwork that [he] need[ed] to file" documenting his wife's, mother's, and son's medical histories. *Id.* at 200-01. He said that he did not realize his previous attorneys had failed to update his information until they provided his file to him in July, which left him too little time to obtain a new attorney or update his information. He reported that he had obtained an attorney for the September 27 hearing, but the attorney could not attend on September 30.

a. *Continuance*

Mr. Ruiz-Nava requested a continuance so that he could hire an attorney and provide corroborating evidence. The IJ denied his request because it found that Mr. Ruiz-Nava "was not diligent in pursuing his applications for relief," the DHS opposed the continuance, and "the case ha[d] been pending since 2006." *Id.* at 76-77.

3

b. *Cancellation of removal*

Mr. Ruiz-Nava argued the IJ should cancel his removal because it would result in an exceptional and extremely unusual hardship to his wife, children, stepchildren, and parents. *Id.* at 66-70, 74-76. Although he testified that his wife, son, stepdaughter, and parents suffered from medical issues, he did not provide supporting documentation. *Id.* at 69, 73, 91.

Mr. Ruiz-Nava's wife testified that she had suffered from depression and anxiety for to 10 or 11 years, resulting in hospitalization. *Id.* at 276-77. She reported taking daily medication and having health insurance. *Id.* at 276-77, 280. She testified that she would not go to Mexico with Mr. Ruiz-Nava if he were ordered removed. *Id.* at 279-80.

In her decision, the IJ made the following points.

First, the IJ said the emotional effects of Mr. Ruiz-Nava's removal on his children and stepchildren are "something that is normally experienced when a [child's] parent is removed from the United States." *Id.* at 75. She recounted Mr. Ruiz-Nava's testimony that he spent half "of the time with his biological children," "he is not sure where they will live if he leaves the United States," and "he's not sure that they have any health coverage." *Id.* The IJ found it "implausible and insincere that as involved as he says he is in his children's life that he states that he doesn't know if they would live with their mothers if he's removed from the United States," and explained that "it would appear to [her] that if your children are

with you that much of a time that you would know more about them, especially [whether] they have health insurance." *Id.*

Second, the IJ found that Mr. Ruiz-Nava's parents "have their own home," do not depend on him financially, both work, and have two daughters in the United States who could help them. *Id.* at 75-76.

Third, the IJ said Mr. Ruiz-Nava "did not submit any documents corroborating" his wife's mental health issues, had "only been married for 2 weeks," and stayed "at his wife's house only 3 to 4 days a week." *Id.* at 76. The IJ noted that "nothing . . . prevent[ed] [his wife] from going to Mexico to see [him] or [from] talking with him on the phone if he is removed." *Id.* at 76.

The IJ thus determined that Mr. Ruiz-Nava "ha[d] not sufficiently corroborated his [hardship] claim" because he did not provide documents supporting any of his family member's medical issues. *Id.* at 72-73. She concluded that Mr. Ruiz-Nava failed to show exceptional and extremely unusual hardship. *Id.* at 75-77.

Mr. Ruiz-Nava again appealed to the BIA, challenging both the denial of the continuance and the hardship ruling.

4. **Second BIA Appeal**

   a. *Continuance*

The BIA affirmed the IJ's denial of a continuance. It concluded Mr. Ruiz-Nava "demonstrate[d] a lack of diligence" in failing to provide corroborating evidence because "[r]egardless of whether he had counsel, . . . [he] could have

5

obtained corroborating evidence in the months leading up to his merits hearing." *Id.* at 3-4. The BIA explained that (1) his case had been pending "since at least 2009"; (2) the immigration court scheduled the September 27, 2019 hearing in October 2017—nearly two years in advance; (3) after his counsel withdrew, he did not move for a continuance "until the day of his merits hearing 6 months later"; and (4) the immigration court had already granted him a continuance to obtain counsel in July 2019. *Id.*

The BIA also rejected Mr. Ruiz-Nava's argument that the two-month delay in receiving his case file from his former attorneys prevented him from obtaining new counsel because he "could have started to seek [new] counsel . . . at the time prior counsel withdrew." *Id.* at 3. The BIA noted that he offered no evidence that he had obtained counsel for the September 27 hearing.

    b. *Cancellation of removal*

The BIA examined the hardship Mr. Ruiz-Nava's removal would cause to his "seven qualifying relatives": his wife, two sons, stepdaughter, stepson, and two parents. *Id.* at 4. It considered whether Mr. Ruiz-Nava's removal would (1) "emotionally affect[]" his children, stepchildren, and his wife and (2) cause his "mother and father [to] be depressed." *Id.* It also considered his wife's testimony about her "mental health issues, suicidal thoughts, and previous hospitalizations." *Id.*

The BIA affirmed the IJ's determination that, "[o]n the record before [it]," Mr. Ruiz-Nava did "not me[e]t his burden of establishing that his qualifying relatives will experience hardship that is exceptional and extremely unusual." *Id.* It noted that

6

Mr. Ruiz-Nava's parents had their own home, covered their own expenses, and had two daughters in the United States "who could look after" them. *Id.* The BIA also noted that Mr. Ruiz-Nava said he spent "half of the time with his biological children" and did "not know where they will live if he leaves the United States" or if they "ha[d] health coverage." *Id.*

Mr. Ruiz-Nava timely petitioned this court for review.

## II.  **DISCUSSION**

Mr. Ruiz-Nava argues the BIA abused its discretion because the "constantly changing" hearing dates prevented him from obtaining an attorney and corroborating evidence. Aplt. Br. at 11, 24. Because the BIA provided a detailed and reasonable explanation for its decision, it did not abuse its discretion. Mr. Ruiz-Nava also argues he presented sufficient evidence to establish hardship, *id.* at 28, but the BIA reasonably concluded that he had not done so.

### A. *Continuance*

1.  **Standard of Review**

We review the BIA's decision to affirm the denial of a continuance for abuse of discretion. *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011). We will reverse "[o]nly if the decision" "rested on an impermissible basis," "was made without a rational explanation," or "inexplicably departed from established policies." *Id.* (alterations and quotations omitted).

"When, as here, a single BIA member issues a reasoned decision addressing a petitioner's arguments on appeal, we confine our review to the BIA's decision and

will not address the IJ's decision except where the BIA has explicitly incorporated his reasoning." *Miguel-Pena v. Garland*, 94 F.4th 1145, 1153 (10th Cir. 2024) (alterations and quotations omitted).

2. **Legal Background**

The party seeking a continuance bears the burden of showing good cause. *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 413 (Att'y Gen. 2018); *Lopez-Valenzuela v. Garland*, No. 21-9526, 2021 WL 5764842, at *2 (10th Cir. Dec. 6, 2021) (unpublished).[1] To show good cause for a continuance due to "lack of preparation," a petitioner "at least must make a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed." *Matter of Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983); *see also Matter of L-A-B-R-*, 27 I. & N. Dec. at 412 ("Good cause . . . may not exist when the [petitioner] has not demonstrated reasonable diligence" or the "DHS justifiably opposes the motion, . . . among other possibilities.").

3. **Application**

The BIA affirmed the IJ's denial of a continuance. Mr. Ruiz-Nava argues the BIA abused its discretion because the "constantly changing" hearing dates prevented him from obtaining a lawyer and corroborating evidence. Aplt. Br. at 11; *see id.* at 20-24. We disagree.

First, the BIA found that Mr. Ruiz-Nava failed to act diligently, which is a "[]permissible basis" for denying a continuance. *Jimenez-Guzman*, 642 F.3d at 1209;

---

[1] We cite unpublished cases as persuasive under Fed. R. App. P. 32.1(A) and 10th Cir. R. 32.1.

*see Matter of Sibrun*, 18 I. & N. Dec. at 356; *Matter of L-A-B-R-*, 27 I. & N. Dec. at 412.

Second, the BIA provided a "rational explanation" for its decision. *Jimenez-Guzman*, 642 F.3d at 1297. It concluded Mr. Ruiz-Nava was not diligent because, "[r]egardless of whether he had counsel," he "could have obtained corroborating evidence in the months leading up to his merits hearing." AR, Vol. I at 3-4. The BIA accurately recited and drew reasonable inferences from the facts to support its conclusion. *See Lopez-Valenzuela*, 2021 WL 5764842, at *3 (affirming a denial of a continuance for lack of diligence when the petitioner "d[id] not address why he delayed retaining new counsel until right before the hearing, given that prior counsel had withdrawn from the case six months earlier").[2]

Third, Mr. Ruiz-Nava provides nothing to show the BIA "inexplicably departed from established policies." *Jimenez-Guzman*, 642 F.3d at 1297 (quotations omitted); *see also Nunez-Pena v. INS*, 956 F.2d 223, 225 (10th Cir. 1992) (explaining that Immigration and Naturalization Service abused its discretion when it "suddenly

---

[2] *See Araiza v. Barr*, 803 F. App'x 215, 219-20 (10th Cir. 2020) (unpublished) (affirming a denial of a continuance for lack of diligence because the petitioner was on notice of his insufficient documentation and "multiple postponements . . . extended the proceedings," even though "only two continuances were granted at [the petitioner's] request"); *Marrufo-Morales v. Lynch*, 627 F. App'x 727, 730 (10th Cir. 2015) (unpublished) (affirming denial of a continuance because the petitioner had four and a half years to collect and submit evidence even though his counsel withdrew "on the eve" of his hearing). !

changed its policy in an adjudicatory opinion and caused undue hardship to those who had relied on past policy").

Because Mr. Ruiz-Nava fails to show the BIA's decision "rested on an impermissible basis," "was made without a rational explanation," or "inexplicably departed from established policies," the BIA did not abuse its discretion. *Jimenez-Guzman*, 642 F.3d at 1297 (alterations and quotations omitted).

## B. *Cancellation of Removal*

### 1. **Standard of Review**

Because the hardship determination is a "mixed question" of law and fact, but "primarily factual," we apply a "deferential" standard of review. *Martinez v. Garland*, 98 F.4th 1018, 1021 (10th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)).[3] "[W]e confine our review to the BIA's decision" because "a single BIA member issue[d] a reasoned decision addressing [Mr. Ruiz-Nava's] arguments on appeal." *Miguel-Pena*, 94 F.4th at 1153 (quotations omitted).

### 2. **Legal Background**

To obtain cancellation of removal, a petitioner must "establish[] that removal would result in exceptional and extremely unusual hardship to the [petitioner's]

---

[3] Before the Supreme Court decided *Wilkinson*, we held that we lacked jurisdiction to review challenges to hardship determinations. *See, e.g.*, *Galeano-Romero v. Barr*, 968 F.3d 1176, 1179 (10th Cir. 2020), *abrogated by Wilkinson*, 601 U.S. at 221-22. In *Wilkinson*, the Supreme Court said we may review these determinations under a "deferential standard of review." 601 U.S. at 222; *id.* at 225. It did not elaborate on the standard, *id.* at 222, and neither have we, *see Martinez*, 98 F.4th at 1021.

spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). "Under this standard, the applicant must establish hardship that is 'substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here.'" *Martinez*, 98 F.4th at 1021 (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001) (en banc)). The BIA should "consider[] . . . the age, health, and circumstances of . . . qualifying family members." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (BIA 2002) (en banc); *see Matter of J-J-G-*, 27 I. & N. Dec. 808, 812 (BIA 2020) (finding that the petitioner's daughter suffering from hypothyroidism did not establish hardship because "there is no indication that she will be unable to continue treatment if the [petitioner] is removed").

3. **Application**

The BIA affirmed the IJ's determination that Mr. Ruiz-Nava failed to establish exceptional and extremely unusual hardship. Mr. Ruiz-Nava argues the BIA erred because (1) he could have provided corroborating evidence establishing hardship had the IJ not abused its discretion in denying him a continuance and (2) his wife's testimony and his own testimony "should be enough to support his application for relief." Aplt. Br. at 12, 26-29; Oral Arg. at 12:24-13:55. Both arguments fail.

First, because the BIA did not abuse its discretion in affirming the IJ's denial of a continuance, the denial did not cause the BIA to err in affirming the IJ's hardship determination.

11

Second, the BIA reasonably exercised its discretion on the hardship issue.[4]  It correctly recited facts from the record regarding possible hardship to Mr. Ruiz-Nava's qualifying relatives.  AR, Vol. I at 4 (discussing Mr. Ruiz-Nava's wife, children, stepchildren, and parents).  The BIA reasonably concluded from these facts "[on] the record before [it]" that Mr. Ruiz-Nava's qualifying relatives would not suffer exceptional and extremely unusual hardship.  *Id.*; *see, e.g.*, *Matter of J-J-G-*, 27 I. & N. Dec. at 812; *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 324 (BIA 2002) (en banc).

To support that his wife would suffer exceptional and extremely unusual hardship from his removal, Mr. Ruiz-Nava cites *In Re: Rodolfo Cajigas Sifuentes*, 2017 WL 4118901 (BIA June 29, 2017), and *In Re: Vincenzo Livigni*, 2003 WL 23521858 (BIA Nov. 5, 2003).  Aplt. Br. at 27.[5]  But neither case involved cancellation of removal or the application of the "exceptional and extremely unusual hardship" standard.  *In Re: Rodolfo Cajigas Sifuentes*, 2017 WL 4118901, at *1-2 (analyzing a

---

[4] Mr. Ruiz-Nava faults the IJ for finding lack of corroborating evidence, Aplt. Br. at 26, 29, but the BIA did not affirm the hardship determination on this basis, *id.* at 11. Instead, the BIA examined whether Mr. Ruiz-Nava's and his wife's testimony showed hardship to any of his qualifying relatives, and it found no hardship.  AR, Vol. I at 4. "[W]e confine our review to the BIA's decision . . . ." *Miguel-Pena*, 94 F.4th at 1153 (quotations omitted).

[5] Mr. Ruiz-Nava mentions hardship to his parents and children in only a single sentence in his opening brief, but he does not provide factual or legal support.  Aplt. Br. at 28.

petitioner's application for adjustment of status); *In Re: Vincenzo Livigni*, 2003 WL 23521858, at *1 (analyzing a waiver of inadmissibility).[6]

## III. **CONCLUSION**

We deny the petition.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[6] At oral argument, Mr. Ruiz-Nava's counsel suggested he did not fully brief this issue because he filed his opening brief before the Supreme Court decided *Wilkinson*, 601 U.S. at 222, which held that we could review hardship determinations. Oral Arg. at 1:18-2:16. But he failed to file a reply brief, ask to file a supplemental brief, or submit a letter under Federal Rule of Appellate Procedure 28(j). *See id.* at 2:16-2:24. Regardless, as discussed, the BIA reasonably concluded he had not shown hardship to any qualifying relative. *See also De La Cruz-Del v. Garland*, No. 23-9525, 2024 WL 2991899, at *3 (10th Cir. June 14, 2024) (unpublished); *Montejano-Martinez v. Garland*, No. 23-9556, 2024 WL 1757401, at *4 (10th Cir. Apr. 24, 2024) (unpublished).