[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14058

Non-Argument Calendar

_____

ESTEBAN FLORES-ALONSO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A200-936-453

_____

Before GRANT, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Esteban Flores-Alonso sought and was denied cancellation of removal under 8 U.S.C. § 1229b.  Because there is no legal or constitutional error in the decision of the Board of Immigration Appeals, we dismiss the petition.

## I.

Flores-Alonso is a Mexican citizen who came to the United States without authorization in 2001.[1] After being stopped for driving without a license, removal proceedings were initiated against Flores-Alonso. In response, Flores-Alonso applied for cancellation of removal under 8 U.S.C. § 1229b, a discretionary form of relief, which the Immigration Judge denied on March 21, 2018. Flores-Alonso appealed to the Board of Immigration Appeals ("BIA"), which "affirm[ed] the Immigration Judge's decision on the ground that the respondent ha[d] not established that his removal would result in exceptional and extremely unusual hardship to his qualifying relatives." Flores-Alonso now timely appeals on two separate but interrelated grounds: 1) that the BIA committed legal error in

---

[1] Flores-Alonso contended that he entered the United States in May 2000. However, based on all the evidence, the Immigration Judge determined that Flores-Alonso "entered in 2001."

applying the exceptional and extremely unusual hardship standard and 2) that the BIA failed to render a reasoned decision.

## II.

There are four statutory eligibility criteria for cancellation of removal. 8 U.S.C. § 1229b(b)(1).  The Immigration Judge found that Flores-Alonso did not meet two of them: 1) the exceptional and extremely unusual hardship requirement and 2) the ten years of continuous physical presence requirement. *See* § 1229b(b)(1). Because the BIA affirmed only on the basis of the exceptional and extremely unusual hardship requirement and because that is the basis of Flores-Alonso's appeal, we train our focus there.

To begin, the exceptional and extremely unusual hardship requirement is governed by BIA precedent. *See Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001); *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002); *Matter of Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002).  Under the exceptional and extremely unusual hardship standard, the BIA considers the "ages, health, and circumstances of qualifying lawful permanent resident[s] and United States citizen relatives" of the applicant to determine whether the hardship the qualifying relative(s) would face upon the applicant's departure from the United States would be "substantially beyond that which ordinarily would be expected to result from the alien's deportation." *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 59, 63 (emphasis and internal citation omitted).  Although the BIA has not established a fixed definition of what constitutes exceptional and extremely unusual hardship, it has indicated

4                    Opinion of the Court                  19-14058

that "very serious health issues" or "compelling special needs in school," are "strong case[s]" while "[a] lower standard of living or adverse country conditions in the country of return" are usually "insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *Id.* at 63–64. And "all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship." *Id.* at 64. In short, the exceptional and extremely unusual hardship standard is a "high" one. *Id.* at 60.

To meet this high standard, in his immigration hearing Flores-Alonso pointed to the consequences of removal for his United States citizen children: the loss of financial support to his kids, the fact that his infant son might remain in the United States while his nine-year-old daughter might return to Mexico with him, and the fact that whether his daughter returned to Mexico with him would be dependent on whether his daughter's mother agreed to a formal custody arrangement. The question of the custody of his daughter was complicated because Flores-Alonso had split with his daughter's mother many years ago, and he had obtained primary custody of his daughter through an informal arrangement "with a notary" from the time his daughter was two years old.

In response to Flores-Alonso's presentation, the Immigration Judge determined that Flores-Alonso "ha[d] not shown that the hardship to his qualifying family members [that is, his children]

would rise to the level contemplated by the statute."[2] The Immigration Judge found that the children did not have special educational circumstances or medical issues that would contribute to the hardship analysis. Even after the colloquy between the Immigration Judge and Flores-Alonso's lawyer about the concern of the custody arrangement, the Immigration Judge found that Flores-Alonso had represented that his daughter would move back with him to Mexico if he were removed. And although the Immigration Judge acknowledged that there would be hardship to the family, ultimately, he determined that such hardship did not rise to the level of exceptional and extremely unusual.

Flores-Alonso appealed, and the BIA affirmed the Immigration Judge's decision. The BIA correctly cited the hardship standard under *Matter of Monreal-Aguinaga*. The BIA evaluated the circumstances of Flores-Alonso's two children, the informal custody agreement with the daughter's mother, the health of the children, the educational opportunities of the daughter, and the financial situation of Flores-Alonso. Then, the BIA explained that while Flores-Alonso's removal would cause his children to experience "some degree of emotional and financial hardship in the event of his

---

[2] As we explain *infra* Part III, we are only reviewing the BIA's decision in this appeal. We provide the determination of the Immigration Judge only as helpful background and because the Immigration Judge is the primary factfinder in immigration proceedings. *See Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010).

6                    Opinion of the Court                    19-14058

removal," it was the kind of hardship that would be "expected upon removal."

The BIA noted that Flores-Alonso pressed on appeal the concern that his daughter might "be placed in state custody in the event of [his] removal." But the BIA explained that the "record evidence" demonstrated that his daughter "would accompany [him] to Mexico," so the BIA "decline[d] to address this argument further."[3] Specifically, the BIA pointed to the fact that Flores-Alonso "testified that if he were removed . . . [his daughter] would accompany him to Mexico." And, because the BIA determined that the circumstances did not suggest that Flores-Alonso's children would experience exceptional and extremely unusual hardship, it affirmed the Immigration Judge's decision. Flores-Alonso then appealed to us.

## III.

On appeal, we may only review legal or constitutional challenges to cancellation of removal, and we must leave the factual findings of the agency undisturbed in such cases. 8 U.S.C. 1252(a)(2)(B)(i); id. § 1252(a)(2)(D); see Patel v. Garland, 142 S. Ct.

---

[3] The BIA also responded to the fact that Flores-Alonso had submitted more evidence on appeal of his continuous presence in the United States by treating the evidence as a motion for remand. The BIA denied the motion to remand because the evidence would have been available before the Immigration Judge, and Flores-Alonso does not appeal that ruling here.

1614, 1619 (2022); *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). Unless the BIA adopts an Immigration Judge's decision, which is not the case here, we review only the BIA's decision. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005).

Flores-Alonso makes two arguments on appeal: 1) the BIA committed legal error in disregarding important facts in the hardship determination, and 2) the BIA failed to render a reasoned decision after reciting the proper legal standards. Flores-Alonso's first argument centers around his contention that the BIA "mischaracterize[d] [the daughter's] hardship as diminished educational and medical opportunities, if she accompanies her father to Mexico," while "fail[ing] to address the real hardship to the child which is, as a result of her father only having custody via an informal written agreement with her mother, it is uncertain whether she will have the legal ability to accompany her father to Mexico." The problem with this argument is that it is inherently factual. The BIA held that Flores-Alonso's daughter would return with him to Mexico based on the Immigration Judge's factfinding, and that factual finding is unreviewable on appeal. *See Patel*, 142 S. Ct. at 1622 (explaining that § 1252(a)(2)(B)(i), the jurisdiction-stripping provision at issue in the present case, prevents review of the agency's "factual findings"). Because we cannot disturb this factual finding, we are left to see if Flores-Alonso has identified any legal error with respect to the application of the law to those facts established in the BIA's decision. He has not identified one. Flores-Alonso seems to suggest in his brief that we should reweigh hardship on appeal. As

8                   Opinion of the Court                   19-14058

sympathetic as we are to his plight, we are precluded from reweigh-
ing the hardship factors now since our review of his case is jurisdic-
tionally limited to "constitutional claims or questions of law." [4]

8 U.S.C. § 1252(a)(2)(D).

Turning to Flores-Alonso's second argument, that the BIA
did not render a reasonable decision, we think that argument fails
for much the same reason as the first argument. The crux of Flores-
Alonso's argument is that the BIA did not consider all the hardship
factors in the aggregate in the way that *Matter of Monreal-Agu-
inaga* instructs it to do, even though it cited the proper legal stand-
ard. Again, after reviewing the BIA's opinion and Flores-Alonso's
argument, we do not see a legal argument for which we would
have jurisdiction to review here. As long as the BIA cites and pro-
ceeds to apply the proper legal standard, as it did in this case, we
cannot make legal error out of an inherently subjective determina-
tion of whether an applicant's relatives will experience exceptional

---

[4] Flores-Alonso also seems to make an alternative argument that in *Matter of
Gonzalez Recinas*, 23 I. & N. at 470, the BIA considered whether there would
be a future means for the applicant to immigrate back to the United States,
and Flores-Alonso argues that such an inquiry should be performed in his case.
Although Flores-Alonso cited a similar legal standard before the BIA in his
brief on appeal, he never made the argument that he personally would have
difficulty immigrating to the United States in the future. So we lack jurisdic-
tion to consider it. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247,
1251 (11th Cir. 2006) (explaining that where the BIA has not passed on the
merits of an argument we lack jurisdiction to consider it).

19-14058                Opinion of the Court                9

and extremely unusual hardship.  For these reasons, we dismiss the petition.

**PETITION DISMISSED.**