[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12057

Non-Argument Calendar

————————————————

SAUL LOPEZ MARTINEZ,
HERIBERTA PEREZ TOVAR,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A089-711-734

_____

Before JORDAN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Saul Lopez Martinez and Heriberta Perez Tovar, husband and wife, petition for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of their applications for cancellation of removal under 8 U.S.C. § 1229b.  After careful review, we deny the petition.

## I.

Lopez Martinez and Perez Tovar are natives and citizens of Mexico who entered the United States in 2004 without admission or parole by an immigration officer.  In 2019, the Department of Homeland Security initiated removal proceedings, charging them as removable for being present in the United States without authorization.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Through counsel, they admitted the allegations and conceded removability.

Lopez Martinez and Perez Tovar filed separate applications for cancellation of removal.  They both requested cancellation on grounds that their removal would result in exceptional and extremely unusual hardship to their eldest child, J.L., who was a United States citizen.  They attached to their applications, among other documents, medical records indicating that J.L. had been diagnosed with attention-deficit hyperactivity disorder ("ADHD"), a learning disorder, and an anxiety disorder.  He had been prescribed the medication Vyvanse, which is used to treat ADHD.  They also

submitted evidence regarding the availability of medical care for ADHD in Mexico.

At the merits hearing in January 2020 before an IJ, Lopez Martinez and Perez Tovar testified in support of their applications. Perez Tovar testified that J.L. had been diagnosed with ADHD, learning disabilities, and social disabilities in 2016, when he was nine years old. He received therapy once a month and was prescribed the medication Vyvanse, which he took once a day during the week to treat his ADHD. He did not receive special accommodations in school. Vyvanse cost approximately $300 without insurance, but J.L.'s insurance paid for it. In Mexico, Vyvanse cost approximately 1,700 pesos, which was $300. Her husband would only be able to make 6,000 pesos per month in Mexico. Perez Tovar was worried that J.L's health would be affected in Mexico because they would not be able to buy his medication there. She did not believe that J.L., who was born in the United States, would be covered by public health insurance in Mexico. Lopez Martinez testified to essentially the same facts as Perez Tovar.

The IJ denied Lopez Martinez's and Perez Tovar's applications for cancellation of removal and ordered them removed. The IJ found that their testimony was credible and that they had met all conditions for cancellation of removal except for the hardship showing. As to hardship, the IJ concluded that J.L.'s medical conditions did not rise to the level of a "serious medical condition" under the BIA's precedent. The IJ noted that J.L.'s ADHD was being controlled with Vyvanse, which was available in Mexico, and there

4                    Opinion of the Court                    23-12057

was no evidence suggesting that therapy was unavailable in Mexico.

The IJ further explained that both Lopez Martinez and Perez Tovar could work and make enough money to support their family in Mexico, adding that they had not checked whether J.L, as a United States citizen born to two Mexican citizens, would be eligible for public health insurance there. The IJ also found that there was no hardship in having J.L. leave the Florida school system, nor was there any issue of potential family separation since the testimony was that the "whole family would stay together."

The IJ concluded that, although Lopez Martinez and Perez Tovar had demonstrated "some type of extreme hardship" based on J.L.'s ADHD, the hardship did not rise to the level of "exceptional and extremely unusual," mainly "due to the lower cost of medicine in Mexico and the availability of care in Mexico for their son's ADHD diagnosis." Considering the evidence "individually and cumulatively," the IJ concluded that they had failed "to establish that their qualifying relative would suffer a hardship that is substantially different from or beyond that which would normally be expected to result from the removal or deportation of an alien with close family members in the United States." So the IJ denied the applications for cancellation of removal.

Lopez Martinez and Perez Tovar appealed the IJ's decision to the BIA. In their joint brief to the BIA, they argued that their case should be remanded for further consideration in light of *Matter of J-J-G-*, 27 I. & N. Dec. 808 (BIA 2020), which was issued shortly

after the IJ's decision and which, in their view, clarified the appropriate standard for evaluating a claim of exceptional and extremely unusual hardship based on the medical condition of a qualifying relative. They otherwise argued that the IJ made factual and legal errors in evaluating their evidence.

The BIA affirmed the IJ's denial of Lopez Martinez's and Perez Tovar's applications for cancellation of removal, stating that it adopted and affirmed the IJ's decision. It explained that it agreed with the IJ's conclusion that Lopez Martinez and Perez Tovar failed to establish exceptional and extremely unusual hardship, citing to *Matter of J-J-G-*. And it concluded that the IJ's factual findings were not clearly erroneous, noting that the IJ had "considered and discussed the relevant factors . . . based on controlling legal authority," again citing to *Matter of J-J-G-*.

## II.

We review the decision of the BIA only, except to the extent that the BIA expressly adopts or agrees with the IJ's opinion or reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). We review de novo arguments that the agency committed legal error. *Jeune v. U.S Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).

Section 1229b allows the Attorney General to cancel the removal of a noncitizen who demonstrates these four things: (1) continuous physical presence in the United States of at least ten years; (2) good moral character during that period; (3) a lack of certain criminal convictions; and (4) "exceptional and extremely unusual

hardship" to a "spouse, parent, or child" who is a U.S. citizen or permanent resident.  8 U.S.C. § 1229b(b)(1).

Section 1252(a)(2)(B) states that we are barred from reviewing "any judgment regarding" certain forms of relief, including cancellation of removal under § 1229b.  8 U.S.C. § 1252(a)(2)(B)(i).  But we retain jurisdiction to review "constitutional claims or questions of law."  *Id.* § 1252(a)(2)(D).  "[T]he statutory phrase 'questions of law' includes the application of a legal standard to undisputed or established facts, also referred to as mixed questions of law and fact."  *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024) (quotation marks omitted).

While this appeal was pending, the Supreme Court clarified in *Wilkinson* that "the application of the statutory 'exceptional and extremely unusual hardship' standard to a given set of facts presents a mixed question of law and fact" that is reviewable under § 1252(a)(2)(D).[1]  *Id.* at 221.  That remains true even if the case "requires a close examination of the facts."  *Id.* at 222.  Thus, our contrary precedent on this question has been overruled.  *See Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1222–23 (11th Cir. 2006) ("Notwithstanding Congress's enactment of § 1252(a)(2)(D), we continue to lack jurisdiction over the BIA's purely discretionary decision that a petitioner did not meet § 1229b(b)(1)(D)'s 'exceptional and extremely unusual hardship' standard.").

---

[1] At our request, the parties have submitted supplemental briefs addressing the effect of *Wilkinson* on this appeal.

Nonetheless, "a court is still without jurisdiction to review a factual question raised in an application for discretionary relief." *Wilkinson*, 601 U.S. at 222.  Thus, "an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides remain unreviewable." *Id*. at 225.  But "[w]hen an IJ weighs those found facts and applies the 'exceptional and extremely unusual hardship' standard, . . . the result is a mixed question of law and fact that is reviewable under § 1252(a)(2)(D)." *Id*. at 222.  "Because this mixed question is primarily factual, that review is deferential." *Id*. at 225.

## III.

"[T]he exceptional and extremely unusual hardship requirement is governed by BIA precedent." *Flores-Alonso v. U.S. Att'y Gen.*, 36 F.4th 1095 (11th Cir. 2022), *abrogated on other grounds by Wilkinson v. Garland*, 601 U.S. 209 (2024); *see Matter of J-J-G-*, 27 I. & N. Dec. 808 (BIA 2020); *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001); *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002); *Matter of Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002). According to the BIA, the hardship to the applicant's qualifying relatives, if the applicant is forced to leave the United States, "must be 'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." *Matter of Monreal*, 23 I. & N. Dec. at 62.

In assessing hardship, the BIA considers several factors, including the "ages, health, and circumstances" of qualifying relatives. *Id*. at 63.  There is no "fixed definition of what constitutes

exceptional and extremely unusual hardship," but the BIA has offered a few examples for guidance. *Flores-Alonso*, 36 F.4th at 1097. For instance, "an applicant who has elderly parents in this country who are solely dependent upon him for support might well have a strong case." *Matter of Monreal*, 23 I. & N. Dec. at 63. So too might an applicant who has a "qualifying child with very serious health issues, or compelling special needs in school." *Id.* But a "lower standard of living or adverse country conditions in the country of return," while relevant to the inquiry, "generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *Id.* at 63–64. Nonetheless, "all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship." *Id.* at 64.

In *Matter of J-J-G-*, issued after the IJ's decision in this case, the BIA clarified the showing required for cancellation applications based on the health of a qualifying relative. *See* 27 I. & N. Dec. at 811–12. The BIA explained that an applicant basing a claim on the health of a qualifying relative "needs to establish that the relative has a serious medical condition and, if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country." *Id.* at 811. Thus, the IJ must evaluate the "seriousness of a qualifying relative's medical condition and the reasonable availability of medical care in the country of removal." *Id.* Nonetheless, *Matter of J-J-G-* reiterated that the hardship determination is "based on a cumulative consideration of all hardship factors." *Id.*

Lopez Martinez and Perez Tozar raise several interrelated errors based on *Matter of J-J-G-*. They argue that the BIA erred when it adopted the IJ's decision and determined that the IJ's decision was correct under "controlling legal authority," specifically, *Matter of J-J-G-*, because *Matter of J-J-G-* was not in effect at the time of the IJ's decision. They assert that the BIA failed to remand their case to the IJ for further consideration under *Matter of J-J-G-* in the first instance, noting that, instead, the BIA decided for itself whether they met their burden under *Matter of J-J-G-*, and arguing that constituted improper factfinding. They contend that, as a result, their applications were not considered under the correct legal standard, and the BIA did not provide a reasoned explanation as to why it departed from its established precedent or engaged in improper factfinding, which was an abuse of discretion. All these arguments are questions of law or mixed questions of law and fact that we have jurisdiction to review under § 1252(a)(2)(D). *See Wilkinson*, 601 U.S. at 221–22.

Here, the BIA did not commit legal error by adopting and affirming the IJ's opinion without remanding for consideration under *Matter of J-J-G-*. Contrary to Petitioners' claim, *Matter of J-J-G-* did not state a new legal standard because it neither overruled nor conflicted with existing BIA precedent on the standard for exceptional and extremely unusual hardship. The discussion of the hardship standard in *Matter of J-J-G-* was the same as that in *Matter of Monreal*, which is evident because *Matter of Monreal* is quoted multiple times and the discussions of the relevant hardship standard were almost identical in both cases. *See Matter of J-J-G-*, 27 I. & N.

Dec. at 811–14; *Matter of Monreal*, 23 I. & N. Dec. at 63–64. And *Matter of J-J-G-* reiterated that "[t]he exceptional and extremely unusual hardship for cancellation of removal is based on a cumulative consideration of all hardship factors." 27 I. & N. Dec. at 811–12. In sum, while *Matter of J-J-G-* clarified aspects of a cancellation applicant's evidentiary burden, it did not change the "cumulative" analysis immigration judges apply in hardship cases or the ultimate standard applicants must meet. *See id.* at 814.

Moreover, the IJ's findings and analysis are fully consistent with *Matter of J-J-G-*. The IJ considered and made findings about both the seriousness of J.L.'s medical condition and the availability of treatment in Mexico as part of its cumulative hardship analysis. *See Matter of J-J-G-*, 27 I. & N. Dec. at 811, 814; *Matter of Monreal*, 23 I. & N. Dec. at 63. The IJ concluded that J.L.'s medical conditions did not rise to the level of a "serious medical condition," noting that his ADHD was being controlled with the medication Vyvanse. *See Matter of J-J-G-*, 27 I. & N. Dec. at 811. The IJ also found that Vyvanse was available in Mexico, that Lopez Martinez and Perez Tovar would be able to afford that medication, that there was no evidence suggesting that therapy was unavailable in Mexico, and that they did not show that J.L. would be ineligible for public healthcare in Mexico. *See id.* at 812 (finding "no indication that [the qualifying relative] will be unable to continue treatment if the respondent is removed"). We lack jurisdiction to review these factual findings, *see Wilkinson*, 601 U.S. at 222, which support the IJ's ultimate conclusion that the hardship to J.L. was not "substantially different from or beyond that which would normally be expected

to result from the removal or deportation of an alien with close family members in the United States." *See Matter of J-J-G-*, 27 I. & N. Dec. at 814; *Matter of Monreal*, 23 I. & N. Dec. at 62.

For these reasons, Lopez Martinez and Perez Tovar have not shown that *Matter of J-J-G-* reflected a change in the decisional law applied by the IJ to evaluate the hardship to their qualifying relative. The IJ's decision was consistent with controlling authority at the time and with the later-issued *Matter of J-J-G-*. It follows that the BIA, in affirming the IJ's hardship determination, did not apply the wrong hardship standard, apply the wrong standard of review, make improper factual findings, or fail to follow its own precedent.

In sum, the BIA did not commit any legal error by adopting and affirming the IJ's denial of petitioners' applications for cancellation of removal without remanding for the IJ to consider *Matter of J-J-G-*.

**PETITION DENIED.**