**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-11926

Non-Argument Calendar

————————————

GABRIEL TEODORO-REGULES,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A200-140-421

————————————

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Gabriel Teodoro-Regules seeks review of an order of the Board of Immigration Appeals ("BIA") dismissing an appeal of an Immigration Judge's ("IJ") order denying application for

cancellation of removal under the Immigration and Nationality Act ("INA") § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).  Teodoro-Regules raises several arguments about the BIA's order.  After careful review, we dismiss some of his arguments for lack of jurisdiction, dismiss one argument for failure to exhaust, and deny the remainder of the petition for review.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Teodoro-Regules, a native and citizen of Mexico, entered the United States at an unknown date.  In August 2013, the Department of Homeland Security ("DHS") served Teodoro-Regules with a notice to appear ("NTA") alleging that he was removable for two reasons: first, under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being a non-citizen present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General; and second, under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an immigrant not in possession of a valid unexpired immigrant visa or other travel document required by the relevant regulations.

Represented by counsel, Teodoro-Regules conceded his removability and applied for cancellation of removal.  Teodoro-Regules's application reported that he had two sons, A., the younger of the two, and M., the older, who are U.S. citizens, having been born

in the United States.[1] *See* U.S. CONST. amend. XIV, § 1.  The application also explained that Teodoro-Regules had entered the United States without inspection in Tucson, Arizona, in 2000, and was originally from Veracruz, Mexico.

Teodoro-Regules filed various documents in support of his application, including: (i) medical records relating to A.'s health; (ii) records relating to M.'s school performance, access to education, physical health, and sports achievements; (iii) medical records relating to an injury Teodoro-Regules suffered at work in June 2018; (iv) a letter from Teodoro-Regules's brother relating to the conditions in Mexico; and (v) information about country conditions in Mexico, including about the availability of healthcare, the prevalence of violence, and the U.S. Department of State Human Rights Report.

At a hearing on his application, in October 2019, the IJ admitted into the record all of the evidence submitted, and Teodoro-Regules signed and swore to the correctness of his application.  The IJ then heard Teodoro-Regules's testimony, through an interpreter, which was as follows.  He was 38 years old and was born in Minatitlan, Veracruz, Mexico.  He entered the United States in May 2000 and had lived here since.  For the previous nine years, he had been in a relationship with Maria Galindo, and the couple had two sons, M., who was eight, and A., who was four.  Galindo was also not lawfully in the United States.  Teodoro-

---

[1] Throughout this opinion, we identify Teodoro-Regules's children using their initials rather than their names.

Regules and Galindo lived with A. and M., as well as Teodoro-Regules's step-daughter, D., who was fifteen.

Teodoro-Regules explained he was schooled in Mexico, attending six years of elementary school, and had worked "in the field" with his father after leaving school. In the United States, he worked for a company cutting down trees and supervised a team of four or five other men. He made approximately $450 per week. He had three brothers, who lived in his hometown in Mexico, and one sister, who lived in Kentucky. His brothers worked in Mexico on a small property, planting and harvesting corn. He owned approximately seven acres of the land in Mexico that his brothers worked on, but he otherwise did not own any property in Mexico.

Teodoro-Regules testified that his duties at work were limited because he had injured his back in a work accident the previous year. Before that accident, he used to climb trees. In the accident, he fell from a tree, in a seated position, and landed on his back. He was taken to the hospital with a fractured back, underwent an operation, and was subsequently bedridden for four months. He was prescribed painkillers, but they were "much too strong" for him, so he did not take them. Because of his injury, he had reduced his hours at work. Workers' compensation insurance had paid the medical bills for his surgery and for his stay in the hospital. While he was hospitalized, his employer assisted him financially.

Teodoro-Regules explained that M. was in third grade and was doing well in school. M. was bilingual, able to communicate fluently in both Spanish and English. Moreover, he was in good

health and played baseball.  Teodoro-Regules brought him to his practices and games.  A., on the other hand, was in prekindergarten.  Teodoro-Regules described A.'s health as "okay" but noted that he had a bone abnormality on his chest that might require surgery by the time he turns 12.

Teodoro-Regules testified that his children would not be able to continue with their studies and, for M., with baseball, if he were removed from the United States.  If he were removed, Teodoro-Regules, Galindo, and his children would all move together to Mexico because Galindo was unable to work in the United States.  He conceded, however, that Galindo had worked cleaning houses in the past.  He also explained that educational opportunities in Mexico were limited, especially where he was from, and the schools there only went through sixth grade.  He would also not be able to work in the fields with his brothers because of his back injury.  For the same reason, he could not perform the only other work available in Veracruz, which was in the construction industry.

On cross-examination, Teodoro-Regules explained that Galindo was unable to work in the United States because she did not have legal authorization to do so.  He acknowledged that Galindo was permitted to work in Mexico.  He explained that after his work injury, the doctors "put metal in [his] back," and, after surgery, told him "to be careful and not lift anything heavy," and that his back would not ever fully heal.  However, he noted that the doctors' statements in this respect were not written down and

he had no record supporting this testimony. He added that the areas closer to the city were unsafe and were plagued by "criminality." He indicated that there may be some public healthcare in Mexico, but he was unaware of its details or whether it would be available to him and his children.

On re-direct examination, Teodoro-Regules clarified that his knowledge of the Mexican healthcare system was limited to facts that his brothers in Mexico had told him, which was that insurance was not available. He also stated that his youngest brother had been threatened by cartels, who had asked him for money. He explained that cartels could put his children in danger if they were removed.

In response to questions from the IJ, Teodoro-Regules explained that A.'s bone issue had not limited him physically but would require "checking to see how it's going" by doctors "year after year." Similarly, with regard to a medical issue with A.'s eye—which was documented in records submitted to the IJ—Teodoro-Regules conceded that "for the moment," A. was "fine," but that his eye condition would also need monitoring. He further described how Galindo had two sisters in Veracruz, Mexico, as well, who may be able to assist the family if they returned to Mexico. He also clarified that he was from a rural area in Veracruz "four-to-five-hour[s]" from the nearest city where there would be medical services.[2]

---

[2] Teodoro-Regules's employer was present and willing to testify at the hearing regarding his ability to work and his good moral character. The government,

In a closing statement, Teodoro-Regules argued that his two citizen children were "completely dependent on" him as a sole provider. He asserted that the country conditions evidence he had provided showed that obtaining work in Mexico would be very difficult and that the minimum wage would be very low. He argued that, moreover, the jobs in Mexico were unsafe. Thus, based on the evidence and testimony, he argued that the children would suffer exceptional and extremely unusual hardship, *see* INA § 240A(b)(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D), if they were required to move with him to Mexico.

Specifically, he argued his health was poor and that he would be unable to provide for his children in Mexico in the way he had been able to in the United States, where he had "a steady job." In Mexico, he explained, his entire family worked in the fields, without insurance, and would face threats by cartels. Further, medical care and schooling beyond the sixth grade were limited. While he conceded that he might be able to move to another area of Mexico, he stated that was not financially able to do so. He also argued that exceptional and extremely unusual hardship, as required for cancellation under the INA, did not require him to show "unconscionable" hardship and he contended that the situation his children would face satisfied the statutory burden.

---

in turn, stated that it would stipulate to Teodoro-Regules's good character and that his "injury has affected his ability to work and may have possibly resulted in a change of duties." The IJ accordingly concluded that the employer did not need to testify.

The government argued that Teodoro-Regules had failed to establish that his two children would suffer exceptional and extremely unusual hardship. Among other things, it argued that: A.'s health conditions only required monitoring; the children would be able to learn Spanish if the family relocated to Mexico; Galindo would be able to work in Mexico, even if the job opportunities were not "glamorous"; and there was no evidence that Teodoro-Regules could not work in the future because of his back injury. Thus, while removal might pose a hardship, the government maintained he had not established such hardship would be exceptional and extremely unusual.

The IJ orally denied Teodoro-Regules's application and ordered him removed to Mexico. In its oral decision, the IJ summarized the procedural history and then noted that the "sole issue" before it was whether Teodoro-Regules was eligible for cancellation of removal.[3] The IJ also explained that Teodoro-Regules had submitted documentary evidence and testified, and that he proffered that his employer could testify and corroborate the information about Teodoro-Regules's injury and speak to his good moral character. Yet, the IJ also highlighted that Teodoro-Regules had not provided any expert testimony or other evidence as to his medical condition. It also concluded Teodoro-Regules was credible, and his testimony was "believable, consistent, and sufficiently detailed to provide a plausible and . . . coherent account of the basis

---

[3] The government filed a transcript of the IJ's oral decision in this Court as part of the administrative record.

of his claim." The IJ further stated it accepted all of the documentary and testimony evidence and had considered it "individually and cumulatively . . . regardless of whether [each piece was] specifically mentioned in the text of [its] decision."

Turning to the merits of his application, the IJ noted that the government did not dispute that Teodoro-Regules had established the other necessary elements for cancellation of removal: continued physical presence, requisite good moral character, and no qualifying criminal convictions. *See* INA § 240A(b)(b)(1)(A)–(C), 8 U.S.C. § 1229b(b)(1)(A)–(C). Accordingly, "the sole issue" was "whether or not" Teodoro-Regules had shown exceptional and extremely unusual hardship to a qualifying relative. *See* INA § 240A(b)(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D). The IJ found that Teodoro-Regules's two young sons were each qualifying relatives. It concluded it was unquestionable that Teodoro-Regules wished to stay in the United States, but that the standard for exceptional and extremely unusual hardship was high, beyond normal hardship, though it was not an "unconscionable" standard, as the BIA had explained in *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001) (*en banc*). It also explained the standard required it to consider all factors in the aggregate.

The IJ stated that Teodoro-Regules's qualifying relatives, as well as his children's mother, would go with him to Mexico if ordered removed. It concluded that, while Teodoro-Regules was concerned about educational opportunities, "there are schools beyond the sixth grade in Mexico in other areas" than where

Teodoro-Regules was from in the country. It also noted that Teodoro-Regules suffered a back injury and had a prescription for pain medication, but that he did not take the medication. Further, "[t]he only medical records" Teodoro-Regules had submitted were "related to the immediate injury and the surgery that occurred shortly thereafter." While Teodoro-Regules's employer was willing to testify, the IJ observed that there was not any documentation about Teodoro-Regules's "current limitation[s] set by doctors or medical documentation" and, therefore, the IJ could not assess how the injury would affect him in the future.

As to Teodoro-Regules's economic circumstances, the IJ summarized that: (i) Teodoro-Regules owned land in Mexico; (ii) he had three brothers in Mexico working on that land growing crops; (iii) he might be able to help the harvesting of this land; and (iv) he "would do what he could" to work on the land. It also explained that Galindo could work and had cleaned houses in the past. In addition, Teodoro-Regules had resources, including the land described above, a car worth approximately "$2,000 to $2,500," and savings of around $2,000 that would assist the family in relocating. Teodoro-Regules had not indicated that his back injury would limit him for an extended period of time, and the IJ reasoned that it could not "make any medical prognosis" based on the lack of medical records in the record. Based on the record, the IJ concluded Teodoro-Regules had not established that he could not find any type of employment; the mother of his children could provide support; and Teodoro-Regules and the children's mother had family in Mexico who could provide assistance as well.

Turning to the health of Teodoro-Regules's children, the IJ noted that the two conditions reported about A.—a bone abnormality and an eye condition—were not "serious" as they did "not require anything more than monitoring," which could be accomplished in Mexico, and did not interfere with A.'s daily activities. Citing *Matter of Correa*, 19 I. & N. Dec. 130 (BIA 1984), it also explained that the fact that medical facilities in Mexico were not as good as in the United States "does not in itself establish" exceptional and extremely unusual hardship. Therefore, despite shortcomings in the healthcare system in Mexico, the IJ found that the situation did not show that the children would suffer exceptional and extremely unusual hardship on this basis.

As to education, the IJ concluded that there was no reason to think that the children could not, because of language barriers, adequately progress in school when they accompanied Teodoro-Regules to Mexico. It also found this educational situation was "common in cancellation cases" and did not establish exceptional and extremely unusual hardship. It explained that neither child had any reported special educational needs such that switching schools would create an exceptional and extremely unusual hardship. It also concluded that the country conditions submitted did not show exceptional and extremely unusual hardship because, among other things, Teodoro-Regules did not argue his children would be unprotected from harm or violence.

In sum, the IJ stated that it did "not doubt that [Teodoro-Regules] has a loving relationship with his children, that he

cares for them, and that [Teodoro-Regules]'s children would experience some level of hardship if they return with [him] to Mexico." Still, it concluded that this hardship "is the type of hardship that normally results when qualifying relatives accompany a close family member to a foreign country such as Mexico. "[B]ased on the totality of the record," it did not "find that what [Teodoro-Regules] has described rises to the level of hardship that is exceptional and extremely unusual." Accordingly, it found that he had failed to meet his burden for cancellation relief.

Teodoro-Regules administratively appealed the IJ's decision. In his notice of appeal, he stated that he "respectfully disagree[d] with the [IJ]" about whether he had established his two United States citizen children would suffer exceptional and extremely unusual hardship. In his brief, Teodoro-Regules summarized the relevant facts and explained that he was appealing "the IJ's decision in connection with the hardship requirement," especially with respect to the tremendous impact on his children. He argued that, under BIA precedent, he only needed to show "hardship substantially beyond that which would ordinarily result from an alien's removal," not "that such hardship would be unconscionable." He maintained that he was able to provide for his children's educational and financial needs in the United States but would not be able to do so in Mexico because he would not be able to earn a reasonable income due to his back injury. He further asserted that his children's opportunities would be far diminished in Mexico, in part because of his lack of financial resources and his own "humble backgrounds." In addition, he contended the emotional support he

provided his children—in providing "a supportive and nurturing environment"—would be impeded by his removal.

In May 2023, the BIA dismissed Teodoro-Regules's administrative appeal in a written order. After noting the relevant standard of review and Teodoro-Regules's argument on appeal, the BIA explained that it "adopt[ed] and affirm[ed] the [IJ]'s decision, for the reasons stated therein, that [Teodoro-Regules] did not establish exceptional and extremely unusual hardship to his qualifying relatives." Teodoro-Regules timely petitioned for review of the BIA's decision.[4]

## II. DISCUSSION

While Teodoro-Regules's brief on appeal is somewhat unclear, it is best read to present three categories of challenges. *See Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1210–11 (11th Cir. 2012) (explaining that we must "look hard" at the petitioner's arguments to determine whether we have jurisdiction over them), *overruled in part on other grounds by Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1277 & n.23 (11th Cir. 2020) (*en banc*). First, he raises challenges to the factual determinations the agency made regarding his

---

[4] After briefing in this case completed, we held Teodoro-Regules's petition for review in abeyance while we considered another case involving cancellation relief. Our opinion in that case issued in 2025, *see Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1204 (11th Cir. 2025), and we asked the parties to submit supplemental briefing on the effect of that decision on this case. The government filed supplemental briefing responding to our request, but Teodoro-Regules declined to do so. We therefore turn to the issues presented without the benefit of any additional briefing from him on *Lopez-Martinez*.

14                  Opinion of the Court                 23-11926

application for cancellation of removal.  Second, he raises two legal challenges, one about whether the agency applied an incorrect burden of proof in determining that he did not establish requisite hardship to his sons and one about whether the agency adequately considered his evidence.  We construe the former as a challenge to the legal standard the agency applied, and the latter as an argument that the agency failed to give his application reasoned consideration.  Third, he argues that the record shows that his application satisfies the exceptional and extremely unusual hardship standard.  Different law and standards of review apply to these challenges, so we take them each in turn.

### A. Jurisdiction, Scope of Review, and Standards of Review

As a threshold matter, we review our jurisdiction *de novo* and *sua sponte*.  *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1321 (11th Cir. 2021), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023).[5]  Under the INA, we lack jurisdiction to review "any judgment regarding" certain forms of discretionary relief, including cancellation of removal.  INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i).  We retain jurisdiction to review "constitutional claims or questions of law" raised in a petition for review.  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).  The

[5] In 2023, the Supreme Court held that a petitioner's obligation to exhaust administrative remedies, found in INA § 242(d)(1), 8 U.S.C. § 1252(d)(1), is a claims-processing rule, not a jurisdictional limitation, and is subject to waiver and forfeiture, *Santos-Zacaria*, 598 U.S. at 419–23 & n.2, overruling our prior caselaw that had held the opposite.

effect of these statutes is that we lack jurisdiction over "factual challenges to denials of" discretionary relief but retain jurisdiction over "constitutional and legal challenges to the denial of that relief, including review of mixed questions of law and fact." *Patel*, 971 F.3d at 1275–76. Taken together, we have jurisdiction to review "immigration authorities' conclusion that an applicant for cancellation of removal hasn't satisfied [INA § 240A(b), 8 U.S.C.] § 1229b(b)(1)(D)'s exceptional-and-extremely-unusual-hardship standard." *Lopez-Martinez*, 149 F.4th at 1205, 1211. Yet, "we lack jurisdiction to review factual determinations underlying the agency's decision on this issue. *Id*. at 1206 (first citing *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024); and then citing INA § 242(a)(2)(B)(i), (a)(2)(D), 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D)).

When we have jurisdiction to do so, "[w]e review the BIA's decision as the [agency's] final judgment, unless the BIA expressly adopted the IJ's decision." *Gonzalez v. U.S. Att'y. Gen.*, 820 F.3d 399, 403 (11th Cir. 2016), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). In deciding whether to uphold the BIA's decision, we are limited to the grounds upon which the BIA relied. *Id.*; *see also Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1369 (11th Cir. 2011) (same). To the extent that the BIA agrees with and adopts the IJ's reasoning, however, we may review the IJ's decision as well. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

We review purely legal issues *de novo*. *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006). We review mixed

questions of law and fact that are "primarily factual"—such as the hardship component of the cancellation of removal statute, INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D)—for substantial evidence. *Lopez-Martinez*, 149 F.4th at 1211 (quoting *Wilkinson*, 601 U.S. at 222, 225). When we review for substantial evidence, we will affirm the agency's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). In doing so, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1029. "This standard is high: we will not reverse a finding of fact unless the record compels reversal." *Laguna Rivera v. U.S. Att'y Gen.*, 130 F.4th 915, 919 (11th Cir. 2025) (citing *Adefemi*, 386 F.3d at 1026–27).

### B. We lack jurisdiction over Teodoro-Regules's Purely Factual Challenges to the Agency's Cancellation Decision.

Several of Teodoro-Regules's challenges in his initial brief are best read as challenges to the IJ's factual findings. Specifically, he contends that the record does not support the IJ's conclusions about the seriousness of his son's medical issues and his back injury. However, these are the sort of direct factual challenges which are precluded from our review under INA § 242(a)(2)(B)(i), (D), 8 U.S.C. § 1252(a)(2)(B)(i). Accordingly, we lack jurisdiction over these contentions and dismiss the petition for lack of jurisdiction in these respects. *See Patel*, 971 F.3d at 1275–76; *Lopez-Martinez*, 149 F.4th at 1205–06, 1211.

### C. Teodoro-Regules has Exhausted Some, But Not All, of His Challenges to the Agency's Hardship Determination.

We address Teodoro-Regules's two legal arguments next. We begin with his argument that the IJ applied the wrong "standard of review" to the hardship issue by failing to acknowledge the effect his incapacity could have on his sons' lives. He notes that the IJ seemed to credit his testimony about his own medical conditions, but also faulted him for not having expert documentation which, he contends, erroneously elevated his burden of proof. He also contends that the facts of his accident were uncontested and adopted by the IJ; and a medical diagnosis to the same effect was unnecessary because, even without such a report, it was reasonable to conclude that the accident, as described, would cause him "permanent consequences" and "limit[]" his movement. The government responds that Teodoro-Regules did not exhaust many of these arguments because he "did not specifically challenge" them before the BIA. We partially agree with the government.

Section 1252(d)(1) of the INA provides, in relevant part, that a court can review a final order of removal only if the noncitizen "has exhausted all administrative remedies available to the [noncitizen] as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). However, this exhaustion provision is "not a stringent requirement." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1298 (11th Cir. 2015), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2. "Simply put, petitioners must have previously argued the 'core issue now on appeal' before the BIA." *Id.* (quoting *Montano-Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008)); *see*

*also Jeune v. U.S. Att'y Gen.,* 810 F.3d 792, 800 (11th Cir. 2016) ("While exhaustion does not require a petitioner to 'use precise legal terminology' or provide well-developed arguments to support his claim, it does require that the petitioner 'provide information sufficient to enable the BIA to review and correct any errors below.'" (quoting *Indrawati*, 779 F.3d at 1297)), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2. Section 1252(d)(1) is not a jurisdictional limitation but, as a claims-processing rule, we generally apply it when it has been asserted by a party. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

Before the BIA, Teodoro-Regules squarely challenged the agency's determination that he did not show his two U.S. citizen children would suffer exceptional and extremely unusual hardship. He also explained the relevant standard and reiterated that he did not need to show "unconscionable" hardship. In doing so, Teodoro-Regules put the "core issue" of the application of the exceptional and extremely unusual hardship standard to the facts of his case before the agency. *Indrawati*, 779 F.3d at 1298; *Jeune*, 810 F.3d at 800. To the extent that the government argues that Teodoro-Regules needed to exhaust each argument in support of his administrative appeal of the IJ's exceptional and extremely unusual hardship determination, such a requirement is contrary to our precedent and the general principle that once an issue is properly preserved, a party is not constrained to make only the arguments they made below. *See Jeune*, 810 F.3d at 800; *see also United States v. Brown*, 934 F.3d 1278, 1306–07 (11th Cir. 2019) ("[O]nce a party has preserved an issue, it may 'make any argument in support of that

23-11926              Opinion of the Court                    19

claim; parties are not limited to the precise arguments they made below.'" (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992))).

However, Teodoro-Regules's first legal challenge is sufficiently different from the argument he raised to the BIA. Specifically, to the extent that Teodoro-Regules argues that the IJ applied the wrong legal standard and "elevat[ed]" his "burden of proof," such a legal argument was not presented to the BIA. Instead, as explained above, Teodoro-Regules argued, and exhausted a claim, that the evidence he had submitted satisfied the exceptional and extremely unusual hardship standard the IJ applied. The "core issue" of whether the IJ applied the correct legal standard, therefore, was not presented to the agency. *Indrawati*, 779 F.3d at 1298. The government has timely raised this failure to exhaust, so we dismiss Teodoro-Regules's petition in part on this issue. *Kemokai*, 83 F.4th at 891.[6]

---

[6] We note, in addition, that we would reject Teodoro-Regules's argument about the legal standard even if he had presented it to the BIA. Teodoro-Regules's briefing does not explain the difference between the standard the agency applied and the correct standard, nor argue that the BIA precedent upon which the IJ relied was erroneous or inconsistent with the statute. *See Ruga v. U.S. Att'y Gen.*, 757 F.3d 1193, 1196 (11th Cir. 2014) (explaining that, when an petitioner fails to raise issues in their briefs, they have "abandoned them and they have no bearing on our decision"). Moreover, the IJ applied the correct standard, citing relevant BIA caselaw and noting that it was required to consider all of the hardship factors in the aggregate.

### D. The Agency gave Reasoned Consideration to Teodoro-Regules's Application.

Teodoro-Regules's second legal challenge involves several arguments that the agency failed to consider the evidence he presented or failed to do adequate factfinding. We read these arguments as raising the question of whether the agency gave his application reasoned consideration.[7]

The BIA must give reasoned consideration to the issues presented to it, meaning that its decision shows that it has "considered the evidence presented and announced its decision in terms sufficient to enable us to know that it [has] 'heard and thought and not merely reacted.'" *Jeune*, 810 F.3d at 804 (quoting *Seck*, 663 F.3d at 1364). We have concluded that the BIA's analysis was sufficient to show reasoned consideration when it listed the basic facts of the case, referred to relevant statutory and regulatory authority, and accepted several grounds on which the IJ denied the petitioner's request for relief. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874–75 (11th Cir. 2018), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2. On the other hand, the BIA fails to give reasoned consideration to a claim when it "misstates the contents of the record, fails to adequately explain its rejection of

---

[7] Typically, we have not found reasoned consideration claims unexhausted, because to do so would "fault" a petitioner "for raising an argument about the lack of reasoned consideration displayed by a [BIA] decision not yet in existence." *Indrawati*, 779 F.3d at 1299 (finding the government's exhaustion argument regarding a reasoned consideration claim to be "facially nonsensical").

logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 874. A reasoned consideration inquiry is a question of law, *Jeune*, 810 F.3d at 799, and we review the question of whether the agency gave a claim reasoned consideration *de novo*, *Zheng*, 451 F.3d at 1289.

Here, we conclude the agency provided reasoned consideration to Teodoro-Regules's application for cancellation of removal. The IJ's reasoning for denying the application was detailed and thorough. It also stated that it was considering all of the evidence submitted, even if it did not reference each document separately. The thoroughness of this opinion, which was adopted wholesale by the BIA, is sufficient to show that the agency "heard and thought and not merely reacted" to Teodoro-Regules's evidence and arguments. *Jeune*, 810 F.3d at 803. Further, none of the signs showing a lack of reasoned consideration—such as "misstate[ments about] the contents of the record, fail[ure] to adequately explain [the] rejection of logical conclusions, or . . . .justifications for [a] decision which are unreasonable and which do not respond to any arguments in the record"—are present in the IJ's decision, which the BIA adopted. *Id.* at 874. Nor did the BIA fail to address salient arguments Teodoro-Regules raised in his administrative appeal. As we discuss below, he objected generally to the agency's application of the extraordinary and extremely unusual hardship standard. The agency reasonably explained that the IJ had not erred in that respect. Accordingly, we deny Teodoro-Regules's petition in this respect.

### E. Substantial Evidence Support's the Agency's Hardship Determination.

Finally, we turn to Teodoro-Regules's primary challenge on appeal. He maintains that the evidence he submitted established that his sons would suffer extraordinary and extremely unusual hardship and that he was a good candidate for cancellation relief. In support of this point, he lists facts which he states show the requisite hardship. When considered together, he argues, this evidence establishes that his sons will suffer extraordinary and extremely unusual hardship if he is removed. After careful review, we conclude substantial evidence supports the agency's determination to the contrary.

The BIA has addressed the "extremely and unusual hardship" standard in several cases. *See, e.g.*, *Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (BIA 2020); *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002); *Matter of Recinas*, 23 I. & N. Dec. at 468–73; *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 60.[8] This body of

---

[8] Teodoro-Regules does not argue that BIA precedent on this issue is contrary to the INA, so we apply BIA precedent in assessing whether he has established the requisite hardship. *See Lopez-Martinez*, 149 F.4th at 1211 n.10 ("No party argued that we should apply a different standard in light of *Loper Bright*, 603 U.S. at 412, and so we don't reach that issue here."). In a notice of supplemental authority, Teodoro-Regules argues that this Court need not give the agency's decision deferential treatment, given the Supreme Court's decision in *Loper Bright*. However, notwithstanding *Loper Bright*, we review whether an applicant has established exceptional and extremely unusual hardship under the deferential substantial evidence test. *See Lopez-Martinez*, 149 F.4th at 1211.

precedent establishes that the exceptional and extremely unusual hardship standard is "high," *Monreal-Aguinaga*, 23 I. & N. Dec. at 59, and "[c]onditions satisfying [the hardship standard] are 'substantially beyond that which ordinarily would be expected to result from the [non-citizen's] removal'" in the regular case, *Lopez-Martinez*, 149 F.4th at 1212 (quoting *Flores-Alonso v. U.S. Att'y Gen.*, 36 F.4th 1095, 1098 (11th Cir. 2022), *overruled in part on other grounds by Wilkinson*, 601 U.S. at 217 n.2).

In *Matter of J-J-G-*, for example, the BIA dismissed an appeal from an IJ's denial of a cancellation of removal application because the applicant failed to show exceptional and extremely unusual hardship to qualifying relatives. 27 I. & N. Dec. at 810–15. The BIA explained that it considers the "'ages, health and circumstances of qualifying . . . United States citizen relatives'" and conducts a "cumulative consideration of all hardship factors." *Id.* at 811 (quoting *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63). "[B]ut to the extent that a claim is based on the health of a qualifying relative, an applicant needs to establish that the relative has a serious medical condition" and, if the relative is going to move with the applicant to the country of removal, "that adequate medical care . . . is not reasonably available in that country." *Id.*

In deciding whether an applicant has established the necessary hardship, the BIA stated that "it is well settled that evidence that a qualifying relative will experience a 'lower standard of living' in the country of removal, including a lower standard of medical care, 'will be insufficient in [itself] to support a finding of

exceptional and extremely unusual hardship.'" *Id*. at 812–13 (alteration in original, quoting *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64).

Among other things, Teodoro-Regules argues that his children will suffer extraordinary and extremely unusual hardship because of: (i) his back injury and related limitations; (ii) limited educational, recreational, economic, and medical opportunities in Mexico; (iii) the financial strain of relocating to Mexico; (iv) A.'s medical challenges; and (v) danger faced in Mexico. The IJ found that he had shown that he "has a loving relationship with his children, that he cares for them, and that his children w[ill] experience some level of hardship if they return with [him] to Mexico." However, as the IJ also explained, these facts do not rise to the high level of extraordinary and extremely unusual hardship because they largely present the sort of "lower standard of living or adverse country conditions in the country of return" that the BIA has found to be insufficient standing alone to show extraordinary and extremely unusual hardship. *See Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64.

In addition, the IJ reasonably concluded that the medical conditions that A. suffers from are not qualifying serious medical conditions under BIA precedent because Teodoro-Regules had not shown that the conditions need anything more than monitoring and the record did not suggest, to the IJ, that such monitoring would not be reasonably available for these conditions in Mexico. *See Matter of J-J-G-*, 27 I. & N. Dec. at 811; *see also Lopez-Martinez*,

149 F.4th at 1213 (concluding that the agency did not err when it found more than "just that *some* kind of care was available—instead, . . . [it found] that [the qualifying relative's] particular needs could likely be satisfied"). While Teodoro-Regules disagrees with these conclusions, we conclude there is no "obvious disconnect between the [agency's] conclusions and the contents of the administrative record." *Lopez-Martinez*, 149 F.4th at 1212. Under our standard of review, therefore, we must deny the petition.

For the reasons we have explained, there was substantial evidence to support the agency's determination that Teodoro-Regules had not shown an extraordinary and extremely unusual hardship to a qualifying relative. *Id.*; *Laguna Rivera*, 130 F.4th at 919; *Adefemi*, 386 F.3d at 1026–27. Accordingly, we deny the petition for review in this respect.

### III. CONCLUSION

For the reasons explained above, we dismiss in part and deny in part Teodoro-Regules's petition for review.

**DISMISSED IN PART, DENIED IN PART.**